the case within the provisions of the labor law, we find no error in this record.

The judgment and order appealed from should be affirmed, with costs to the respondent.

PATTERSON, P. J., and SCOTT, J., concur.

McLAUGHLIN, J. (dissenting). I dissent. The court erred in refusing to charge that "the structure in this case" did not come within the provisions of sections 18 and 19 of the labor law (Laws 1897, p. 467, c. 415). A plank placed upon two "horses" for the purpose of enabling the men employed to reach the guy ropes to adjust them can no more be said to have been a scaffold, within the meaning of the statute, than could an empty box or any other temporary appliance, had it been used for the same purpose. It was an appliance used in the erection of the building, but no more so than a stepladder, hammer, chisel, or saw. It was not a "scaffold," within the meaning of the statute.

I think the judgment should be reversed, and a new trial ordered.

HOUGHTON, J., concurs.

---

### BALTIMORE & O. R. CO. v. LA DUE et al.

(Supreme Court, Appellate Division, First Department. November 13, 1908.)

1. CARRIERS (§ 34*)—INTERSTATE COMMERCE—UNREASONABLE RATES—DETERMINATION—JURISDICTION.

A shipper, seeking relief from unreasonable rates established for interstate commerce, is required by Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3153), to primarily invoke redress through the Interstate Commerce Commission, which is vested with exclusive original jurisdiction to determine the reasonableness of rates fixed in an established schedule.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 34.*]

2. CARRIERS (§ 27*)—AGREED RATES—ILLEGAL CONTRACT.

If an agreed rate for the transportation of interstate freight is less than the rate shown by the schedule posted and published as required by Interstate Commerce Act Feb. 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3153), the agreement is illegal and unenforceable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 94; Dec. Dig. § 27.*]

3. CARRIERS (§ 196*)—INTERSTATE FREIGHT—TRANSPORTATION—RATES—OVERCHARGE—COUNTERCLAIM—BURDEN OF PROOF.

Since the effect of the federal legislation regulating interstate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3153]) is to remove the rate question from private agreement, a shipper, having filed a counterclaim in an action by the carrier for freight, alleging an agreement for a less rate than that charged, and having stipulated that the rate charged was the published and filed rate, "made up of a combination of local rates," had the burden of proving that the appropriate rate was not the sum of such local rates, but another rate, established and filed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 884; Dec. Dig. § 196.*]

Appeal from Appellate Term.

Action by the Baltimore & Ohio Railroad Company against Charles La Due and another. From a determination of the Appellate Term (57 Misc. Rep. 614, 108 N. Y. Supp. 659), affirming a judgment of the Municipal Court in favor of defendants on a certain counterclaim, and from an order denying plaintiff's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward V. Conwell, for appellant.

Herbert Goldmark, for respondents.

SCOTT, J. The plaintiff appeals from a determination of the Appellate Term of the Supreme Court, affirming a judgment of the Municipal Court. The plaintiff sued for freight charges on certain hay shipped by defendants from Indiana to New York. The latter counterclaimed for excess charges upon certain other shipments from Indiana and Ohio to New York, alleging that such charges, which they had been obliged to pay, "were exorbitant and excessive, in that the fair and reasonable value and agreed price of the services rendered by plaintiff in the transportation of said cars, and the advances made by plaintiff," were much less than the amount actually collected and paid. The whole controversy turns upon these counterclaims, which were allowed by the judgment appealed from.

It is not contended that the payments were voluntary. If the defendants' position rested alone upon the allegation that the rate of freight charged was unreasonable and exorbitant, it would be clear that the Municipal Court was without jurisdiction to pass upon the counterclaims. That question was decisively settled by the Supreme Court of the United States in Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, wherein it was held that:

"A shipper, seeking reparation predicated upon the unreasonableness of the established rate, must, under the act to regulate commerce (Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3153]), primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule, because the rates fixed therein are unreasonable."

The defendants' pleading, however, is open to the construction that a recovery is sought because the rate charged exceeded that which had been previously agreed upon, and there was evidence to sustain a finding that there had been a special contract to transport the hay at 27 and 27½ cents per hundredweight, while the defendant was obliged to pay 40 cents per hundredweight. It is conceded, as, indeed, it must be, that if the agreed rate was less than the rate shown upon the schedule posted and published as required by the interstate commerce act the agreement for the reduced rate was illegal and could not be enforced. Texas & Pac. R. R. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011. The parties to the action entered upon

a stipulation, which is a part of the record, and which, so far as concerns the counterclaims, reads as follows:

"The rates at which certain claimed unreasonable and exorbitant charges on the shipments described and set out in the answer and counterclaim of the defendants herein were computed are those fixed in certain schedules of rates, fares, and charges for the transportation of passengers and property, established, filed, published, and posted by each of the companies handling such shipments, as required by an act of Congress entitled 'An act to regulate commerce,' approved February 4, 1887, and the various acts amendatory thereof, which said rates had been continuously in force upon the route of each of said companies over which said shipments passed from the respective points of origin to the respective points of destination set out in said answer and counterclaim for a period of six months before such shipments were made; said rates being made up of a combination of local rates."

This stipulation, as we consider, constitutes a complete answer to the defendants' counterclaim, as it establishes the fact that the charges made by plaintiff were those established as required by the interstate commerce law, and in the absence of any statement to the contrary it is to be presumed were the rates and charges applicable to the shipments in question. The defendant lays great stress, however, upon the concluding words of the quotation given from the stipulation "said rates being made up of a combination of local rates," and insists that there may have been, notwithstanding, a through rate established according to law, and that that through rate may have been the same rate which had been agreed upon between the parties.

It is urged with great insistence, and seems to have been thought below, that, a special agreement for a 27-cent rate having been proven, it was incumbent upon the plaintiff to show that no through rate had been established, or, if it had, that it corresponded with the rate which the defendant was obliged to pay. With this contention we are unable to agree. Section 6 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3156]), so far as necessary to be considered with reference to the present case, and as it stood when the shipments referred to in the counterclaims were made, reads as follows:

"That every common carrier subject to the provisions of this act shall print and keep open to public inspection schedules showing the rates and fares and charges for the transportation of passengers and property which any such common carrier has established and which are in force at the time upon its route. * * * And when any such common carrier shall have established and published its rates, fares and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to demand, collect or receive from any person or persons a greater or less compensation for the transportation of passengers or property, or for any services in connection therewith, than is specified in such schedule of rates, fares and charges as may at any time be in force. * * * It shall be unlawful for any common carrier, party to any joint tariff to charge, demand, collect or receive from any person or persons a greater or less compensation for the transportation of persons or property, or for any services in connection therewith, between any points as to which a joint rate, fare or charge is named thereon than is specified in the schedules filed with the commission in force at the time." Section 6, Act Feb. 4, 1887, being chapter 104 of the Laws of the 49th Congress, as amended by chapter 382 of the Laws of 50th Congress approved March 2, 1889 (25 Stat. 855 [U. S. Comp. St. 1901, p. 3156]).

Section 1 of the so-called "Elkins Act," being chapter 708 of the Laws of the Fifty-Seventh Congress, approved February 19, 1903 (32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880]), provided as follows:

"And it shall be unlawful for any person, persons, or corporation to offer, grant, or give or to solicit, accept or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate commerce by any common carrier subject to said act to regulate commerce and the acts amendatory thereto whereby any such property shall by any device whatever be transported, at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereto, or whereby any other advantage is given or discrimination is practiced."

The resulting effect of the federal legislation regulating interstate commerce is to remove the question of rate from the realm of private agreement. Every contract of carriage by a common carrier engaged in interstate commerce must, as a matter of law, be at the rate fixed and established as provided by statute, and no agreement as to the rate to be charged is valid or enforceable if it varies in any degree from the rate thus fixed and established. Texas & Pac. R. R. Co. v. Abilene Cotton Oil Co., supra; Gulf, Colorado, etc., Ry. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910; Texas & Pac. Ry. v. Mugg, supra; Armour Packing Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681. The carrier is entitled to receive, and the shipper is required to pay, the rates fixed. No more can lawfully be demanded. No less can lawfully be accepted. In an action, therefore, to recover excess charges, it is wholly immaterial whether or not any special agreement was made as to rates. If the rate charged corresponded with the established schedule, it was lawfully charged. If it did not so correspond, it was unlawfully charged, and the excess may be recovered. The question in each case is whether or not more was charged than the amount specified in the established schedule.

A defendant, seeking an affirmative judgment by way of counterclaim, must allege and prove all the essential facts to sustain his claim, precisely as if he were plaintiff. Applying these rules to the present case, it will be seen that the defendants neither alleged nor proved the necessary facts to entitle them to recover. They alleged a special contract as to the rate to be charged; but that was immaterial. In order to recover they should have alleged and proved that the rate charged was in excess, not of the special rate agreed to, but of the appropriate rate established as required by law. This burden rested upon the defendants, but was not assumed by them.

It follows that the determination of the Appellate Term and the judgment of the Municipal Court must be reversed, and a new trial granted, with costs to the appellant in this court and the court below to abide the event. All concur.