BALTIMORE AND OHIO SOUTHWESTERN RAILWAY COMPANY *v.* NEW ALBANY BOX AND BASKET COMPANY.

[No. 7,219. Filed April 25, 1911. Rehearing denied October 13, 1911. Transfer denied November 17, 1911.]

1. COMMERCE.—*Interstate.—Contracts.—Shipping Goods.—Liability of Shipper.*—One who engages a railroad company to transport freight in interstate commerce is liable for the established rate on such freight, regardless of any contract such shipper might have with the consignee. p. 651.

2. COMMERCE.—*Interstate.—Rates.—Publication.—Conditions Precedent.*—The tariff of rates for interstate commerce is established when such rates are filed with and promulgated by the interstate commerce commission; and the posting of such schedules is not a condition precedent to the carrier's right to collect such rates. p. 652.

3. COMMERCE.—*Interstate.—Rates.—Mistake.—Action for Balance.*—Where, by mistake, a railroad company's agent quoted a wrong rate on an interstate shipment, and such incorrect rate was paid, the company's action on account for the balance due is of legal, and not of equitable, cognizance. p. 653.

4. COMMERCE.—*Interstate.—Rates.—Notice.*—A shipper must take notice of the rates for interstate shipments; and he relies, at his peril, on the statement of the carrier's agent. p. 654.

5. CONTRACTS.—*Illegal.—Estoppel.—Interstate Commerce.—Rates.*—An interstate carrier is not estopped from recovering the balance due for a shipment by the unauthorized act of its agent in quoting an illegal freight rate. p. 654.

6. CONTRACTS.—*Interstate Freight Rates.*—Parties have no power to fix the rates on interstate shipments; and contracts therefor are void. pp. 655, 657.

7. COURTS.— *Jurisdiction.— Interstate Commerce.— Rates.*— The state courts have jurisdiction of actions by carriers for the recov-

ery of the balance due from shippers engaged in interstate commerce. p. 657.

8. APPEAL.—*Rehearing.*—*Jurisdiction.*—The question of want of jurisdiction can be raised at any time, even on petition for a rehearing. p. 657.

From Floyd Circuit Court; *William C. Utz,* Judge.

Action by the Baltimore and Ohio Railway Company against the New Albany Box and Basket Company. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Charles L. Jewett, Henry E. Jewett, Edward Barton* and *R. S. Allen,* for appellant.

*A. Dowling,* for appellee.

ADAMS, J.—This action was brought by appellant against appellee to recover an unpaid balance of certain freight charges, alleged to be due to appellant for transporting a carload of nested baskets for appellee from New Albany, Indiana, to Hudson, New York.

The amended complaint is in one paragraph, and states that prior to April 7, 1905, plaintiff was, and since said date has been, a railroad corporation, owning and operating a line of steam railroad extending through the states of Illinois, Indiana and Ohio, and, in conjunction with connecting carriers, is engaged in interstate commerce between New Albany, Indiana, and Hudson, New York; that prior to April 7, 1905, plaintiff and its connecting carriers, in compliance with the statutes of the United States, commonly known as the "Interstate Commerce Law," had established and published official tariffs of the rates to be charged for transporting goods and merchandise from New Albany, Indiana, to Hudson, New York; that said tariffs had been duly published and filed with the Interstate Commerce Commission, and were kept on file in the office of plaintiff at New Albany, Indiana, accessible to, and for the information of, shippers and of defendant; that on April 7, and during the performance of the services hereinafter named, said rates were in full force, and bound plaintiff and connecting carriers to the rate there-

in fixed for the transportation of merchandise between the points named; that the rate so fixed and in force at the time, to be charged for the transportation of one carload of nested baskets from New Albany, Indiana, to Hudson, New York, was $114; that defendant was engaged in manufacturing nested baskets at New Albany, Indiana, and shipping them by rail to points in other states in carload lots; that it had a selling price for its baskets, and, by its method of doing business, fixed the price at which it would sell•and deliver a carload of its product to a given purchaser by adding to the selling price the freight to be charged for transportation from New Albany to destination, and quoting the aggregate as its price free on board at destination; that when the cars arrived at destination the consignee paid the freight charges, and remitted the balance of said price to defendant in full settlement; that on said April 7, 1905, defendant had an order for a carload of nested baskets to be delivered to A. W. Ham, Hudson, New York, and applied to plaintiff's agent at New Albany, Indiana, for information as to the charge for transporting a car from New Albany to Hudson; that by mistake and inadvertence of said agent defendant was informed that the rate was $68.40, instead of $114, the fixed and lawful rate; that defendant did not examine the tariffs for itself, but acted upon the statement of said agent, and quoted and shipped a carload of baskets at a price based on the erroneous statement of the rate; that the car was received by plaintiff, and transported over its line and the lines of connecting carriers to Hudson, New York, and there delivered to said A. W. Ham, upon the payment by him of $68.40, as the full freight charges; that plaintiff's other agents, and those of its connecting carriers, participated in and perpetuated the mistake of the agent at New Albany as to the rate, and not until after the goods had been delivered was it discovered that an illegal rate had been charged; that on September 9, 1907, plaintiff and its connecting carriers notified said A. W. Ham that said car had been transported at less

than the lawful rate, and demanded that he pay the sum of $45.60, which he refused to do; that on December 6, 1907, plaintiff likewise notified defendant and demanded that it pay said balance of $45.60, which defendant refused and still refuses to pay; that said sum of $45.60, with interest from April 7, 1905, is due and wholly unpaid. Judgment is demanded in the sum of $55.

To this amended complaint defendant filed its demurrer, on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained defendant's demurrer, and, plaintiff electing to abide by its amended complaint and its exception to the ruling of the court in sustaining the demurrer thereto, final judgment was rendered against it, that it take nothing by its complaint, and that defendant recover its costs.

The amended assignment of errors sets out six separate specifications, the first of which is that the court erred in sus taining defendant's demurrer to plaintiff's amended complaint. The remaining specifications of error are included in the first.

Amended section six of the interstate commerce act reads as follows: ''That every common carrier subject to the provisions of this act shall file with the commission created by this act and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, by pipe-line, or by water when a through route and joint rate have been established. If no joint rate over the through route has been established, the several carriers in such through route shall file, print and keep open to public inspection, as aforesaid, the separately established rates, fares and charges applied to the through transportation. The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain the classifi-

MAY TERM, 1911.        651

Baltimore, etc., R. Co. *v.* New Albany Box, etc., Co.—48 Ind. App. 647.

cation of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee.   Such schedules shall be plainly printed in large type, and copies for the use of the public shall be kept posted in two public and conspicuous places in every depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently inspected.   *   *   *   No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs.''   34 Stat. 586, U. S. Comp. Stat. Supp. 1909, 1153.

It is urged that no cause of action is stated against appellee, for the reason that the complaint avers that the freight charges were paid by the consignee; that it was the 1. duty of the last carrier to collect transportation charges, and to this end such carrier is given a lien upon the property transported, for such charges.   While this

is true, it was the shipper—in this case the appellee—who engaged the services of appellant, and who became liable for the charges in the first instance. Such liability could only be discharged by payment. Assuming that the complaint otherwise states a cause of action, the action was properly brought against appellee.

It is next insisted that the complaint does not show compliance with the terms of the interstate commerce act, in that there is no averment that on April 5, 1905, appellant had "posted" two copies of the tariff schedules in its office or station at New Albany, Indiana. The complaint avers that "before April 7, 1905, the plaintiff and its connecting carriers, through which goods and merchandise was transported from New Albany, Indiana, to Hudson, New York, had, in compliance with law, established and published official tariffs of its rates and charges for the transportation of goods, wares and merchandise between New Albany, Indiana, and Hudson, New York, which tariffs had before that time been duly published, and had been filed with the Interstate Commerce Commission of the United States, and were also kept on file at the office of plaintiff in New Albany, where they were accessible for public inspection and for information, and for the inspection and information of defendant."

The tariff of rates is established and in force when it has been published and filed with the Interstate Commerce Commission, and has been approved and promulgated by said commission. The posting of the schedules in the office or station of the carrier is not a condition precedent to the taking effect of such rates. This was settled by the United States Supreme Court, in the case of *Texas, etc., R. Co.* v. *Cisco Oil Mill* (1907), 204 U. S. 449, 27 Sup. Ct. 358, 51 L. Ed. 562, in which Mr. Justice White, delivering the opinion of the court, said: "The requirement that schedules should be 'posted in two public and conspicuous places in each depot,' etc., was not made a condition prece-

dent to the establishment and putting in force of the tariff of rates, but was a provision based upon the existence of an established rate, and plainly had for its object the affording of special facilities to the public for ascertaining the rates actually in force." See, also, *United States* v. *Howell* (1892), 56 Fed. 21, 29.

To hold that before the tariff of rates and charges, approved by the Interstate Commerce Commission, becomes effective, it is necessary that the schedules should be posted in two public and conspicuous places in appellant's station at New Albany, Indiana, would be to hold that the putting in force of the rates for transportation of interstate commerce depends upon the act of the railroad company or its agents. This would be an impossible interpretation to place on the act in question. It would give the railroad company, which might be injuriously affected by the established rates, the power practically to nullify the orders of the commission, by neglecting or refusing to post the schedules. Whether failure to post, as insisted by appellee, would subject appellant to penalties, as provided in section ten of the act, is not under consideration, and could not, in any event, be determined in this jurisdiction.

Appellee is in error in assuming that this is an equitable proceeding for the correction of a mistake, and therefore is governed by the rules that obtain in equity causes.

3. The complaint before us will not bear such construction. It is clearly an action to collect a balance due on freight charges. The manifest purpose of appellant in setting out the details of the transaction with such fullness, was that the questions of law arising upon the facts might be determined by the ruling upon demurrer to the complaint. The action being one at law, no question of laches arises, and the suit could be brought at any time within the period of limitation.

It is finally insisted by the learned counsel for appellee

that as the freight rate between New Albany, Indiana, and Hudson, New York, over appellant's railroad and its connecting lines, was peculiarly within the knowledge of appellant and its agents, and as appellee relied on the statement of the agent, and sold his goods accordingly, any loss resulting from the mistake of appellant's agent should be borne by the party whose declarations caused the loss. This would ordinarily be true; but, as applied to the facts stated in this complaint, the contention is without merit. The averments of the complaint are that appellee applied to appellant's agent for information as to the freight rate on a car of nested baskets from New Albany, Indiana, to Hudson, New York, to enable appellee to quote a price on the baskets delivered at the point of destination; that, by mistake and inadvertence, appellant's agent informed appellee that the freight charge was $68.40, when in truth the established legal rate was $114; that the official tariffs, showing the freight rates between the points named, were on file at appellant's office, where such tariffs were accessible for public inspection, and for the information of appellee. These averments do not make out an agreement of any kind. Appellee, as well as appellant, as a matter of law, was charged with notice and knowledge of the legal rate; but assuming that there was an agreement to deliver the car at destination for $68.40, appellant would not be estopped from demanding and collecting the full legal rate.

A carrier will not be estopped by the act of its agent from repudiating an unlawful contract for the transportation of interstate commerce; and where a shipper relies upon an agreement of the carrier, made either purposely or inadvertently, no estoppel will arise, for the reason that the agreement upon which the shipper relies is in itself illegal and void, and estoppel can never be founded upon an illegal act or contract. *Melody* v. *Great Northern R. Co.* (1910), 25 S. Dak. 606, 127 N. W. 543; *Louisiana R., etc., Co.* v. *Holly* (1911), 53 South. (La.) 882.

It has been held repeatedly that the right of private contract between the shipper and the carrier has been wholly abrogated by the enactment of the interstate commerce law. After the tariff of rates has been duly 6. established, as provided by law, the rate on any given shipment ceases to be a matter for negotiation between the parties. The carrier is then required by law to render a service for the public, and the established freight charges are enforceable, not by reason of any contract, but by virtue of the law that fixes the rates. *Baltimore, etc., R. Co.* v. *La Due* (1908), 112 N. Y. Supp. 964, 128 App. Div. 594; *New York, etc., R. Co.* v. *Smith* (1909), 115 N. Y. Supp. 838, 62 Misc. 526; *Texas, etc., R. Co.* v. *Mugg* (1906), 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; *Gulf, etc., R.* v. *Hefley* (1895), 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910; *Texas, etc., R. Co.* v. *Abilene Cotton Oil Co.* (1907), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553; *Fisher* v. *Great Northern R. Co.* (1908), 49 Wash. 205, 95 Pac. 77; *Armour Packing Co.* v. *United States* (1908), 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681.

In the case of *Baltimore, etc., R. Co.* v. *La Due, supra,* the court said: "Every contract of carriage by a common carrier engaged in interstate commerce must, as a matter of law, be at the rate fixed and established as provided by statute, and no agreement as to the rate to be charged is valid or enforceable if it varies in any degree from the rate thus fixed and established. * * * The carrier is entitled to receive, and the shipper is required to pay, the rates fixed. No more can lawfully be demanded. No less can lawfully be accepted. In an action, therefore, to recover excess charges, it is wholly immaterial whether or not any special agreement was made as to rates. If the rate charged corresponded with the established schedule, it was lawfully charged. If it did not so correspond, it was unlawfully charged, and the excess may be recovered." To the same effect are the cases of *Central Ga. R. Co.* v. *Butler Marble, etc., Co.* (1910), 8

Ga. App. 1, 68 S. E. 777, and *Georgia Railroad* v. *Creety* (1908), 5 Ga. App. 424, 63 S. E. 528.

In the case last cited, the court said: "What we are compelled to hold is that where the transportation has taken place, the shipper is due the carrier the amount of charges required by the schedule of rates filed and published in accordance with the law, and that no agreement to the contrary can exempt him from liability for the sum thus due, and that if the carrier delivers the goods without collecting the full sum required by the tariffs, an action will lie in his favor to recover the unpaid balance."

Nor is the question of the good faith of both the appellee and the agent of appellant, nor the fact that appellee will suffer loss in consequence of the mistake made, proper matters for consideration in determining the law of this case. Good faith would doubtless save the parties from the charge of criminal intent, at least up to the time when the truth became known, and the loss suffered by appellee cannot affect or change the rule of law. The rate given to appellee was an unlawful rate, and can neither bind the company making it nor protect the shipper receiving its benefits. *Chicago, etc., R. Co.* v. *Hubbell* (1894), 54 Kan. 232, 38 Pac. 266; *St. Louis, etc., R. Co.* v. *Ostrander* (1899), 66 Ark. 567, 52 S. W. 435; *Haurigan* v. *Chicago, etc., R. Co.* (1907), 80 Neb. 132, 139, 117 N. W. 100.

Our conclusion is that the complaint in this case states a cause of action, and the demurrer thereto should have been overruled. The judgment is therefore reversed, with instructions to overrule the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

## ON PETITION FOR REHEARING.

ADAMS, J.—In a petition for rehearing, it is urged with much earnestness by counsel for appellee that the Floyd Circuit Court had no jurisdiction of the subject-matter of the action, and that therefore this court could not acquire jurisdiction on appeal. If the first proposition is true, then the conclusion is obviously true.

7.

The question is presented for the first time on petition for rehearing. The rules provide that points not made in the original briefs will not be considered on rehearing, but we think the question of jurisdiction is one of such a character that it should be considered by the court at any time while the appeal is pending.

8.

In the original opinion it was held that the complaint stated a cause of action for the collection of a balance due on interstate freight charges. This holding is not questioned, but it is now insisted that the action was founded upon an alleged violation of the United States statute known as the "interstate commerce law," and that jurisdiction was in the federal court rather than in the state court. We cannot agree with counsel for appellee in this contention.

It was clearly stated in the original opinion that the freight rate on said shipment was not and could not be a matter of negotiation between the shipper and the carrier. The only agreement that could be entered into by these parties was that which impliedly arose through the tender of the freight by appellee and the acceptance of it by appellant for transportation and delivery at destination. The consideration for this service was fixed by law, and became a part of the agreement. When the appellant undertook to deliver appellee's goods at Hudson, New York, the lawful charge for such service was $114, which presumptively was known by both parties. For this charge the carrier was

6.

bound to render the service, and for this service the shipper was bound to pay the lawful rate.

The complaint charges that the rate fixed by law, and which appellee was bound to pay, has not been paid in full, and to collect the unpaid balance, this action was brought. The proceeding was not founded upon an alleged violation of a federal statute, but was to collect a debt that arose out of transportation service rendered by appellant, pursuant to an implied agreement.

The Floyd Circuit Court had jurisdiction not only of the parties, but also of the subject-matter. The petition for rehearing is overruled.