## LOOMIS et al. v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1911.)

1. MONEY PAID (§ 1*)—CARRIAGE OF GOODS—FAILURE TO FURNISH FACILITIES —FURNISHING BY SHIPPER—RECOVERY FROM CARRIER.

Plaintiff requested defendant railroad company to furnish grain cars, which it agreed to do, and, relying on its promise, plaintiff brought his grain to the station when he found that the cars had no bulkheads, and, if the grain were shipped without bulkheads, barely half a load could be safely shipped, and plaintiff, in order to ship the grain, furnished material, and had the bulkheads put in at small expense. Defendant had been accustomed to put in bulkheads for shippers for a number of years. *Held,* that at common law plaintiff could recover from defendant the cost of putting in the bulkheads, since in doing so he only performed defendant's implied obligation to furnish cars suitable for shipping grain.

[Ed. Note.—For other cases, see Money Paid, Cent. Dig. §§ 1–16; Dec. Dig. § 1.*]

2. COURTS (§ 489*)—INTERSTATE COMMERCE—ACTION IN STATE COURT.

Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 9, 24 Stat. 382 [U. S. Comp. St. 1901, p. 3159]), provides that any person claiming to be damaged by any common carrier may either complain to the commission or sue for recovery of the damages for which the carrier may be liable under the act in any federal District or Circuit Court, but that he should not have the right to pursue both remedies. *Held,* that section 9 did not prevent a shipper to whom cars were furnished for shipping grain without bulkheads from recovering from the carrier in a suit in a state court the expense of putting in bulkheads in order to ship the grain; he being entitled to recover such expense at common law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1342; Dec. Dig. § 489.*]

3. CARRIERS (§ 40*)—FAILURE TO FURNISH FACILITIES—LIABILITY OF CARRIER —"PRIVILEGES OR FACILITIES."

The furnishing of lumber for bulkheads for a grain car was not the furnishing of "privileges or facilities" within Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156) as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (U. S. Comp. St. Supp. 1909, p. 1153), requiring the schedules filed by a carrier with the Interstate Commerce Commission to state the privileges and facilities granted or allowed by the carrier, and the fact that a carrier's printed schedule did not show that bulkheads were furnished in grain cars would not prevent a shipper, who furnished material for constructing bulkheads in cars furnished him for shipping grain, in order to make the cars available for use, from recovering the expense of such bulkheads from the carrier; the carrier being under a common-law obligation to pay such expense.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 120–122; Dec. Dig. § 40.*]

Kruse and Spring, JJ., dissenting.

Action by Leslie G. Loomis and another against the Lehigh Valley Railroad Company. On defendant's motion for a new trial upon a case containing exceptions ordered to be heard at the Appellate Division in the first instance upon directed verdict for plaintiffs. Motion for new trial denied.

See, also, 140 App. Div. 915, 124 N. Y. Supp. 1120.

The action was commenced in August, 1909, to recover the value of certain lumber furnished by the plaintiffs to construct certain doors or bulkheads

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in cars which were furnished to the plaintiffs for the shipment of grain, and which doors or bulkheads it is alleged were necessary in order to enable the plaintiffs to make the shipment of grain in the cars furnished to them by the defendant. No question is raised upon this motion as to the value of the lumber or of the services rendered by the plaintiffs in the premises. In other words, it is not urged that, if the plaintiffs are entitled to recover, the verdict directed by the court is excessive.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Lyman M. Bass, for the motion.
Edward P. White, opposed.

McLENNAN, P. J. The material facts are not in dispute. The plaintiffs were shippers of grain over the defendant's railroad. Seasonably, as it appears, they asked the defendant to furnish to them cars at certain points upon its railroad which would enable the plaintiffs to ship such grain. The defendant assumed to comply with such request, and furnished cars for the purpose of shipping the grain which the plaintiffs had caused to be assembled at certain stations upon defendant's railroad. When such grain was taken by the plaintiffs to such stations, they discovered that the cars furnished by the defendant for the transportation of such grain would not in any sense accommodate the shippers because there were no grain doors or bulkheads in the center, and that, therefore, if grain was put into such cars without grain doors or bulkheads, hardly half a load could be carried with safety; that, if a full load was attempted to be loaded, a considerable part of it would fall out and be wasted. That being the situation, the defendant having practically agreed that on a certain day, at a particular station on the line of its road, it would have a car or cars for the accommodation of the plaintiffs' shipment of grain, the plaintiffs, relying upon such promise, came to the station or cars with the grain to be shipped and which would fill such cars. When such grain arrived, it was discovered that there was no provision made for building or making grain doors or bulkheads, and no material provided for that purpose. So that the plaintiffs concededly were under the necessity of deciding whether they would use the cars furnished to them for the purpose of taking their grain to its destination, which concededly as delivered to a station were wholly unfit for such purpose, or whether they would seek to remedy a trivial defect in each of such cars, to wit, by building grain doors or bulkheads, and thus make the cars furnished by the defendant suitable for the purpose for which they were furnished. The plaintiffs in this case furnished at their own cost and expense only the lumber which was necessary in order to make the cars furnished by the defendant suitable for the purposes for which they were furnished.

[1] Under the rule at common law, we think it must be conceded that the plaintiffs acted strictly within their rights in the premises. Indeed, under such rule, they were obligated to make such trivial repairs as might be necessary in order to use the cars furnished by the defendant rather than to say that, because of such trivial defects which rendered the cars useless for the purpose intended, they would

not use the same, but would hold the carrier liable for all damages which might result either on account of a falling market or otherwise, because it failed, as it had agreed, to furnish cars suitable for the shipment which was to be made. We consider that there would be no difference, so far as the proposition of law is concerned, if the defendant in this case furnished cars to the plaintiffs for the shipment of their grain which were unsuitable for that purpose because they were not provided with grain doors or bulkheads than if it had furnished cars to the plaintiffs for the shipment of their grain in which there were holes in the roofs or in the floors, and which grain, if it had been put in such cars, would have been damaged or destroyed before it reached its destination, as the shippers well knew. Under such circumstances, would it not have been the duty of the shippers, if they attempted to use such cars, to repair the roofs or floors, to the slight extent indicated, make the shipment, and charge to the railroad company the cost of the repairs so made by them? At common law, or under all the laws that have been declared in the jurisprudence of this state, except as they may be modified by certain rules alleged to have been adopted by the Interstate Commerce Commission or by some federal statute in the premises, there can be no doubt but that such was the obligation of the carrying company and of the shippers. The railroad company agreed to furnish cars, impliedly, at least, at a certain station upon its railroad, at the instance of shippers of grain. It was understood by both parties that the cars asked for and to be furnished would be suitable for transporting grain. In substance, by the agreement of the parties, the cars were to be at a certain station at a particular time, and the shippers of grain were to have it there ready to be put into such cars. The cars came as agreed, the grain came ready to be placed therein, but it was discovered that through some oversight, intentional or otherwise, the cars were unsuitable for the transportation of such grain, and there was no provision made by the railroad company by which they could be made suitable. The shippers thereupon, at a comparatively trivial expense, made the cars suitable for the purpose for which they were intended, and in this action they are simply asking that the railroad company which has failed in the performance of its contract should make them, the shippers, good for the necessary cost incurred by them in making the cars which the railroad company had furnished suitable for the purpose for which they were furnished.

[2] It, however, is urged that such obligation imposed by the common law is nullified or rendered nugatory by the interstate commerce act, section 9 of which provides that:

"Any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the commission, as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act in any District or Circuit Court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies and must in each case allege which one of the two methods of procedure herein provided for he or they will adopt."

As we interpret the facts in this case, there was no question which arose between the parties which was in any way affected by the provision of the interstate commerce act above quoted. You might as well say that if a man in the state of New York contracted with the New York Central Railroad Company to ship a load of cattle or of horses from Rochester to some point in Massachusetts, and through the negligence of the railroad company some of such animals were killed or injured, such shipper could not maintain an action in the courts of this state to recover the damages which he sustained. In the case at bar the contract was made and violated in this state, and for such violation we think the aggrieved party had the right to seek redress in the courts of this state.

[3] Section 6 of the interstate commerce act provides:

"Every common carrier subject to the provisions of this act shall file with the commission created by this act and print and keep open to the public inspection schedules showing all the rates, fares and charges for transportation between different points on its own route. * * * The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried and shall contain the classification of freight in force and shall also state separately all terminal charges, storage charges, icing charges and all other charges which the commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect or determine any part of the aggregate of said aforesaid rates, fares and charges or the value of the services rendered to the passenger, shipper or consignee."

As I understand it, it is urged that the furnishing of lumber by the plaintiffs with which to make grain doors or bulkheads in the cars which were furnished for the purpose of shipping grain, and which were not suitable for such purpose until such doors or bulkheads were made, was a furnishing by the defendant of "privileges or facilities." We think the furnishing of lumber which was necessary to make the cars suitable for the purpose for which they were furnished was not in any sense the furnishing of "privileges or facilities" within the provisions of such act. Suppose one of the cars furnished to the plaintiffs in this action had come to the station where it was to be loaded with grain, and one of the hinges on the outer door had been broken to such an extent that such door would not remain in place. Could it be said, if the shipper had put on a new hinge in order to make such car serviceable, that he could not recover because the railroad company under the provisions of law above quoted was prohibited from furnishing to him "privileges or facilities"?

We think that the whole argument is fallacious; that it was never intended by the interstate commerce act to prohibit the parties to a contract, one a railroad company and the other a shipper, to make a valid agreement within the state, to be performed within the state, which would prevent either of such parties from invoking the rules of the common law for their protection and the securing of their rights in the premises. Of course, it must be admitted that if a shipper sought to make charges for repairs to a car or sought to make charges for other expenses alleged to have been incurred by him, which, in effect, would be a rebate of freight charges in his favor, such attempt would

be condemned, and the Interstate Commerce Commission, under the provisions of the law creating it and defining its powers, would not only have the power, but it would be its duty, to declare such attempt illegal, and in violation of the provisions of the law. But in this case nothing of that sort is suggested, either in the evidence or upon the argument of counsel. It is practically conceded that the plaintiffs in this action only expended such money as was absolutely necessary in order to have their grain transported in the cars which the defendant furnished to them for that purpose. No suggestion of discrimination, no suggestion that a rebate was given to them. The plaintiffs in this action are simply asking that they be reimbursed for the actual value of the lumber which they put into defendant's cars to make them suitable for the purpose of transporting grain which the defendant had agreed to transport. As it seems to us, there is absolutely no difference between this case than if they had used the lumber to repair a hole in the roof or a hole in the floor of any one of such cars.

It also appears, although I do not consider it of very much importance, that the defendant railroad company for a period of a quarter of a century had been furnishing lumber for the very purpose of doing what the plaintiffs did in this case, to wit, for the purpose of making the cars furnished by the defendant for shipping grain suitable for such purpose, and, indeed, it appears that at certain stations upon the line of such railroad such lumber is still furnished. We conclude that the right of action which the plaintiffs assert is given to them by the common law, and that there is nothing in any of the provisions of the interstate commerce act or any other federal statute which prevents the enforcement of such right in the courts of this state where the cause of action arose.

The whole matter in controversy, as it seems to me, is extremely simple. The defendant, as required by the Interstate Commerce Commission, published a schedule of rates for the transportation of grain from points in this state to other points, some of them in foreign states. The plaintiffs in this case ordered cars to be furnished to them at certain points within this state; they agreeing to pay the schedule rate or tariff. The cars were furnished at a particular station. The plaintiffs were there with their grain to load it into such cars. They found that the cars were not suitable for carrying grain, but that by infinitesimal expense, to wit, by putting in grain doors or bulkheads and furnishing the lumber for the same, they could have their grain transported properly. They performed the duty which was imposed upon the defendant, and which it undertook to perform, to wit, to furnish cars suitable for the transportation of grain. They did it at the least expense, and in this action they only ask reimbursement. As we have seen, under such circumstances, they had a perfect cause of action at common law for the cost of doing what the other party, to wit, the railroad company, had agreed to do, but failed, and, as before suggested, we think that there is no provision of the interstate commerce act which prevents the recovery by the plaintiffs in the courts of this state of the actual amount of the expenditures made by them in the premises.

We conclude that the defendant's exceptions should be overruled, and its motion for a new trial denied, with costs.

Defendant's exceptions overruled, motion for new trial denied, with costs, and judgment directed for the plaintiffs upon the verdict, with costs. All concur, except SPRING and KRUSE, JJ., who dissent.

KRUSE, J. (dissenting). I think the judgment should be modified by deducting therefrom the amount of the claims arising out of the interstate commerce shipments. If the state courts have jurisdiction at all to determine the merits of those claims, the question must be determined by the federal statutes relating to interstate commerce, as interpreted by the federal courts. I think such charges cannot be recovered or allowed under the federal rule without specifically so providing in the defendant carriers published tariff, and concededly no such provision is contained therein.

The interstate commerce act requires carriers to file and publish tariff rates, and provides that they shall not charge or receive more or less than the published tariff for the transportation of persons or property, or for any service in connection therewith, and forbids carriers to extend to a shipper any privileges or facilities in the transportation of passengers or property, except such as are specified in the tariffs. Interstate Commerce Act, § 6.

There was no express promise by the railroad company to pay the shippers for the lumber for which the plaintiffs seek to recover; and, if there had been, it would not be enforceable without being specified in the tariff, if the furnishing of such lumber was a service connected with the shipment, or a facility in the transportation thereof within the meaning of the interstate commerce act, as I think it was. As was said by Mr. Justice Scott in Baltimore & Ohio R. R. Co. v. La Due, 128 App. Div. 594, 598, 112 N. Y. Supp. 964, 967:

"The resulting effect of the federal legislation regulating interstate commerce is to remove the question of rate from the realm of private agreement. Every contract of carriage by a common carrier engaged in interstate commerce must, as a matter of law, be at the rate fixed and established as provided by statute, and no agreement as to the rate to be charged is valid or enforceable if it varies in any degree from the rate thus fixed and established."