AMERICAN RAILWAY EXPRESS COMPANY *v.* JOHNSON BUTTER COMPANY.

[No. 14,669. Filed November 3, 1933.]

*Beasley, Aikman, O'Brien & Beasley,* for appellant.

*Perry Smith, Charles H. Bedwell* and *Tella C. Haines,* for appellee.

SMITH, J.—Appellant brought this action against appellee to recover undercharges for transferring certain goods by express from Bloomfield, Cory, and Clay City, Indiana, to Terre Haute, consigned to appellee.

The cause was tried upon appellant's second amended complaint which charged that appellant is a corporation, engaged as a common carrier of freight and express matter between cities in the state of Indiana, and lawfully authorized to transact such business; that in years 1921 and 1922 appellant handled, carried, transported, and performed express service in the handling and transporting of milk, cream, and other dairy products from Bloomfield, Cory, and Clay City in the state of Indiana, to Terre Haute, Indiana, consigned to the appellee, and delivered these products to appellee at Terre Haute, Indiana; that appellee accepted said shipments, an itemized list of which is attached to the complaint and made a part thereof.

The complaint further alleges that there was a mis-

take made in fixing the rates upon these shipments from these various places, and that the rates actually collected were less than should have been collected under the schedule which was on file with the Public Service Commission of the state of Indiana at the time, and in the offices of appellant at said points during the times of said shipments. Then follow further allegations that the rate which should have been charged was known as the "classification rate" and called for "pick-up service" at the points of origin of shipments or delivery thereof; that all the shipments were accepted and transported by appellant; that appellant's wagons called for and picked up the shipments at the addresses of various shippers at the order and direction of the shippers, but that in collecting the rate at the point of destination, a "commodity rate" was collected instead of the classification rate, which was higher. To this amended complaint, appellee filed an answer in general denial which closed the issues.

The case was submitted to the court and a jury for trial, and a verdict rendered for appellee. The appellant seasonably filed its motion for new trial which was overruled by the court, the overruling of which is the only error assigned in this appeal.

The motion for new trial sets forth several grounds, only two of which are presented by appellant in its brief, namely: (a) The verdict of the jury is contrary to law; (b) the verdict of the jury is not sustained by sufficient evidence. All other grounds set forth in the motion for new trial are not presented in appellant's brief, and are therefore waived.

It will be noted that there are three different places in Indiana where these shipments originated, and that all were delivered by appellant to appellee at Terre Haute, Indiana. We will notice first the question pertaining to the shipments from Bloomfield, Indiana.

The substance of the facts pertaining to these ship-

ments, many of which were stipulated and agreed upon, is as follows: Appellant is a corporation duly authorized and empowered to act as a common carrier of freight and express matter throughout the United States, and particularly between various stations and points in the state of Indiana; that for seven years it conducted such express business between the stations named above, over and along certain railroads; that prior to the 6th day of May, 1921, the time when these shipments began, appellant had complied with the statutes of the state of Indiana by publishing its official tariffs and rates to be charged for transporting freight and express matter between the stations above referred to, which schedules were published and filed with the Public Service Commission of Indiana, and kept on file in the office of the appellant at each of said stations above named; that on the 6th day of May, 1921, and, during all the rendering of the services herein, these rates were in full force and effect, and bound the appellant to the rates therein fixed; that the appellee is a corporation duly organized under the laws of Indiana with its place of business at Terre Haute, Indiana, and at the times of shipments involved herein, was engaged in the business of buying and selling milk and cream and other dairy products; that in the conduct of its business purchased from various persons located at various stations milk, cream and other dairy products; that during the period from May 6, 1921, to and including August 4, 1922, appellant handled, carried, transported milk, cream and other dairy products from the stations of Bloomfield, Cory, and Clay City, Indiana, to the city of Terre Haute, Indiana, as the point of destination, among which were shipments of cream consigned to the appellee at Terre Haute, Indiana, and accepted by said appellee upon delivery; that upon delivery of these shipments, which are stipulated and set forth in the record,

the appellant demanded payments from the appellee of its charges for handling and transporting said shipments, and was paid the full amount demanded. There was also included in the stipulation of facts an itemized statement of the shipments of cream from various consignors of these different places to appellee at Terre Haute, Indiana, between said dates.

According to the evidence, the amount paid was based upon the commodity rate and not upon the classification rate, which was considerably higher. The undisputed evidence was that, if the rate had been figured upon the classification basis for the Bloomfield shipments, there would be due appellant a considerable sum of money representing the undercharge.

The regular rate between Bloomfield and Terre Haute, which was known as the classification rate, included "pick-up service." These shipments, according to the evidence, were all picked up by appellant from the consignor, taken to appellant's depot, and then sent by rail to appellee at Terre Haute, Indiana. The tariff schedules on file, under which these shipments were made, provided that for this service the classification rate should be charged, which would have amounted to much more than was collected from appellee. Under the schedule, when a pick-up service is rendered, the classification rate must be charged, and appellant had no right to carry the shipments at a lower rate, or even contract to carry them at a lower rate than provided in the schedule. This rate cannot be varied by contract or mistake, for such rate, until changed by the Public Service Commission, is a part of the law. *Baltimore and Ohio Southwestern Railway Co.* v. *New Albany Box and Basket Company* (1911), 48 Ind. App. 647, 94 N. E. 906; *Cleveland, Cincinnati, Chicago and St. Louis Railway Company* v. *Alexandria Paper Company* (1919), 71 Ind. App. 119, 124 N. E. 402.

Appellee conceded in the oral argument that the shipments from Bloomfield were "pick-up shipments," and says in its brief, "The only question here involved would be the application of the rate to the shipment under the particular circumstances of the particular case, and the application of such rate against the party against whom appellant is seeking to collect."

The courts have nothing to do with the reasonableness of the rates. That is for the Public Service Commission in intrastate shipments, and for the Interstate Commerce Commission in interstate shipments. The same rule applies in either case. *Cleveland, etc., R. Co.* v. *Alexandria Paper Co., supra; Louisville and Nashville Railroad Company* v. *Maxwell* (1915), 237 U. S. 94, 59 L. Ed. 853, 35 S. Ct. Rep. 494.

The courts do have the right to make application of the proper rate. The only rate that could be lawfully applied to shipments from Bloomfield, under the evidence in this case, is the classification rate, which was not paid by appellee. The evidence clearly shows that this was the proper rate, and whether appellant failed to collect the same by mistake or not, it was bound under the law to collect the classification rate.

As to the second point stated by appellee, there can be no question but that appellant has the right to collect this undercharge from appellee because it, being the owner of the shipments, and having accepted the same, and paid the charges asked at the time, is liable for any undercharges therefor. *New York Central R. Co.* v. *Warren Ross Lumber Co.* (1922), 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160.

A different situation arises concerning the shipments from Cory and Clay City for the reason that there was no pick-up service. These shipments were transported over the Evansville, Indianapolis and Terre Haute Rail-

way from Cory and Clay City to the city of Terre Haute. The evidence shows that the express charged was the commodity rate which was less than the classification rate. The tariffs introduced in evidence show that the commodity rate shall not apply on shipments transported locally over certain named railroads, including the Evansville, Indianapolis and Terre Haute Railway over which these shipments from Cory and Clay City were transported. This tariff provides that the "commodity rate will not apply on shipments transported locally over any one of the following lines of railroads:". Listed among them is the Evansville, Indianapolis & Terre Haute Railway, as is also the Cleveland, Cincinnati, Chicago and St. Louis Railway. Therefore, the classification rate should have been charged, which was more than the commodity rate. The undisputed evidence was that the commodity rate was applied to each of the shipments from the three points of origin, namely: Corey, Clay City, and Bloomfield. The tariff called for the application of the classification rate in each instance, and, that rate not having been collected, there was an undercharge on each of these shipments; and the difference between the classification rate and the commodity rate was a considerable sum and is due to the appellant herein.

The jury found for the appellee and there is not sufficient evidence to sustain this verdict. The verdict is also contrary to law. Judgment reversed with directions to the lower court to sustain appellant's motion for a new trial and for such other proceedings as may be necessary, not inconsistent with this opinion.