[No. 10422.     Department One.     December 5, 1912.]

## CHARLES RICHARDSON et al., Appellants, v. CHARLES A. BROWER et al., Respondents.[1]

COVENANTS—QUIET ENJOYMENT—CONSTRUCTION—OUTSTANDING LEASE—RELATION—ESCROWS. Upon a sale of property under a written agreement to accept the premises subject to the "present tenancy," rents to be adjusted as of the date of delivery of the deed, which was done, the grantee thereafter collecting the rents, an action for breach of covenant for peaceable possession and quiet enjoyment by reason of an outstanding lease cannot be maintained, it appearing that the parties considered the tenancy and contracted with reference thereto.

SAME—LEASE AS INCUMBRANCES — "EXISTING TENANCIES" —CONSTRUCTION—KNOWLEDGE—ATTORNMENT. An action for breach of covenant of warranty against incumbrances by reason of an outstanding lease cannot be maintained where the grantee had knowledge of the lease, and there was an attornment and apportionment of the rent at the time of the transfer.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered September 28, 1911, dismissing an action on covenants, after a trial on the merits. Affirmed.

*Walter M. Harvey (John A. Shackleford*, of counsel), for appellants.

*Hudson, Holt & Harmon* and *Fletcher & Evans*, for respondents.

CHADWICK, J.—On December 15, 1908, Charles M. Gardner, now deceased, sold to Guy L. Morris and Charles

[1]Reported in 127 Pac. 1098.

Richardson certain real property, occupied by a three-story brick building in Tacoma, Washington, for the sum of $95,000, upon the following terms.

"Balance of purchase price to be paid as follows: Forty-five thousand ($45,000) upon delivery of clear title excepting mortgage for thirty thousand dollars ($30,000) hereinafter referred to and deed of conveyance and fifteen thousand dollars ($15,000) in annual payments of five thousand dollars ($5,000) each at 5% interest and assume present mortgage of thirty thousand ($30,000). Upon delivery of a good and sufficient warranty deed excepting said mortgage or contract of sale agreeing to convey said property free and clear of all incumbrances."

It was further provided that:

"Purchaser agrees to accept the premises subject to the present tenancy; the rents, insurance and interest, on the incumbrance, if any, to be adjusted as of the date of delivery of deed or contract as herein provided."

Thereafter the deal was consummated, the rents, insurance, interest, taxes, etc., were adjusted as of January 13, 1909, and the purchasers, the plaintiffs here, thereafter collected all the rents from the building. At the time of the delivery of the deed and for a long time prior thereto, the ground floor with part of the second floor of the building was in the possession of the Tayler-Gardner Company and its receiver, it being then in process of liquidation by the courts. The Fidelity Trust Company of Tacoma had received the money and notes from the purchasers, and by direction of the owners had kept possession of them until the last note was paid. Although disputed by plaintiffs, we are convinced that it was the understanding of the bank that it held the papers as an escrow pending complete performance of the contract. The testimony of the officer having the matter in charge is supported by the fact that the deed remained in the possession of the bank until the last note was paid, no demand being made therefor. The deed was in common-law form,

7—71 WASH.

and contained the usual covenants. Alleging a breach of the covenant for peaceable possession and quiet enjoyment, plaintiffs brought this action. The material parts of their complaint follow:

"That on the said 13th day of January, 1909, there were (unknown to the plaintiffs) certain secret and unrecorded leases of portions of said premises which had been made, executed and delivered by the said Charles N. Gardner, in his lifetime, together with the said Mary A. Gardner, his wife, and particularly there had been made, executed and delivered by the said Charles N. Gardner, in his lifetime, together with his wife, a lease of the C. Street front of said premises to Tayler-Gardner & Company, a corporation, which was at said date in the hands of its receiver, one John B. Reed, which facts were unknown to the plaintiffs.

"That the said Charles N. Gardner in his lifetime, together with his wife, failed, neglected and refused to put the plaintiffs herein, in possession of said premises, the same being then occupied by the said John B. Reed, as receiver of the said Tayler-Gardner & Company, and other tenants of said Charles N. Gardner, now deceased, and his said wife who refused to vacate said premises upon the demand of the plaintiffs; that the said plaintiffs were kept out of possession of said premises by tenants of said deceased, Charles N. Gardner, and his wife, from the first day of February, 1909, to the first day of February, 1910; that the fair and reasonable rental value of said premises during said time was the sum of eight hundred dollars ($800) per month, net, that is over and above the light and water rent, and other expenses of maintenance, but on account of the occupation of said premises by tenants of said Charles N. Gardner, deceased, and his wife as aforesaid, the said plaintiffs from the first day of February, 1909, to the 31st day of December, 1910, received from said tenants of the said deceased and his wife, the sum of four hundred dollars ($400) per month, and only said sum, and during said eleven months, plaintiffs aforesaid lost in rentals the difference between the amount received by them from the tenants of said deceased and his wife the sum of four hundred dollars ($400) per month, and the fair and reasonable rental value of said premises, to wit: the sum of eight hundred dollars ($800) per month, making in all the sum of forty-four

hundred dollars ($4,400), and said plaintiffs by reason of the facts aforesaid received no rent, whatever, for the month of January, 1910, and the said plaintiffs by reason of the breach of said agreement and covenants of warranty on the part of said deceased and his wife, have been damaged in the full sum of fifty-two hundred dollars ($5,200), no part of which has ever been paid by the said deceased and his wife or the defendant to the plaintiffs."

Damages are prayed for in the difference of the rental value of the premises. After a trial the court below found for the defendants, and dismissed plaintiffs' suit.

Upon this appeal, many questions of law have been proposed and discussed. A careful review of the evidence has convinced us that the trial judge was correct in his judgment. There are two controlling questions of fact, the first being whether the deed was left in escrow pending payment of the notes; and the second, whether appellants had such notice of the existing tenancy at and before the time the deed was executed and delivered (in escrow) as to bind them to the contract as it has been acted by the parties, and to a literal meaning of the words of the preliminary contract: "subject to existing tenancies." As suggested, the affirmative of these propositions is sustained by a preponderance of the evidence, and being thus established, but one legal conclusion can follow; that is, that there can be no recovery.

But appellants most seriously contend that, although the deed was left at the bank in escrow, it is subject to the equitable doctrine of relation; and the lease to Tayler-Gardner Company not being excepted *eo nomine*, appellants are entitled to recover. If we were in doubt as to the original contract and intent of the parties, some ground for this contention could be found. But there is ample testimony to show that the question of tenancies was considered by the parties, and the contract was drawn with reference thereto. It may be true that appellants would not have purchased the property if they had reason to believe that the tenancy would have continued beyond the time, or a reasonable time, after they

took possession. But there is evidence showing that, if they relied upon an immediate vacation, it was in consequence of their own negotiations with the tenant, and not because of the form of the contract, which was not misleading, or of the deed which was drawn thereunder. It might be argued with equal force under the testimony that Gardner would not have sold the property if the appellants had not contracted to take it subject to his contracts. The doctrine of relation is invoked and applied to protect a right or equity; never to defeat or destroy them. Considering the relations of the parties from the time of their first negotiations and their subsequent conduct, even up to the time this suit was brought, we find no place for its application.

Finally, appellants contend that, if the court is to construe the contract and deed together, it can be done only by saying that the phrase "existing tenancies" means only such tenancies as are not incumbrances within the meaning of that term. There are cases holding that any lease or tenancy is an incumbrance, whether within the knowledge of the grantee or not. But there are many well-considered cases—and we are inclined to believe that they state the rule as it should be— holding that, where certain leases were within the knowledge of the parties, and from an inspection of the whole record it seems most likely that the deed was accepted subject thereto, an action cannot be maintained upon a covenant against incumbrances. This rule is declared generally by some courts; by others reference is made to some statute. But, wherever made to rest, the rule is the same; it comes of sound reason, for a lease is not always an incumbrance. Mr. Devlin, in his work on Deeds (3d ed.), § 906, after saying that the word "incumbrance" does not admit of a general, and at the same time accurate, definition, says:

"Take, for instance, the case of an outsanding lease. It can easily be imagined that, in many cases, the fact that a piece of property was leased for a number of years would, were the property sought for an investment, add to its value:

while, if the purchaser desired the present possession of the property, the existence of a lease might detract from its market value."

In *Allen v. Lee*, 1 Ind. 58, 48 Am. Dec. 352, it is said:

"A general covenant of warranty does not, at least conclusively, extend to such incumbrances as were known to the purchaser at the time of the contract and which he agreed to pay or discharge himself in addition to or as part of the consideration moving from him to the vendor, and when the question is, as in this case, what was the true consideration paid for the land? we think such facts may be given in evidence without in any manner contradicting the terms of the written warrants."

The case of *Williams v. Frybarger*, 9 Ind. App. 558, 37 N. E. 302, was in many respects similar to the case at bar. The court held "that the mere occupancy of the vendor's tenants cannot operate as a breach of the covenants of the deed." It will be remembered that the rents were adjusted between the parties, and after January 13, 1909, the tenant attorned to appellants.

"As a general rule, however, no one selling real estate in a city would dream that his covenant was broken by there being a tenant from year to year in possession. Usually the rent is apportioned, as are the taxes, interest on incumbrances, etc., up to the date of the conveyance, and the tenant attorns to the purchaser. Such a tenancy for years is obviously no breach of the covenant for seisin." Rawle, Covenants for Title (5th ed.), § 58, footnote.

"And it is conceived that in practice, in the ordinary case of the sale of improved property which is tenanted, and of which by the terms of the contract the rent passes with the reversion, few vendors ever dream of specially excepting the lease from the operation of a covenant against incumbrances. An apportionment is usually made, up to the date of the deed or of the delivery of possession, of the taxes, interest on incumbrances, water-rent, and the like, on the one hand, and of the rent, on the other; the former being paid by the vendor and the latter by the purchaser, to whom the tenant then at-

torns and pays the rent when due. Here it would seem impossible to call such a lease an incumbrance." Id., § 78.

"At the common law, after attornment, the occupancy of the tenant could not be deemed a breach of any covenant in the deed. The reason is obvious. The tenant was thereafter the tenant of the purchaser. In contemplation of law the tenant received his possession from such purchaser, and at the expiration of his term was bound to surrender it to him. The statute now accomplishes the same purpose; it transfers the possession. It enables the purchaser to collect the rent, to enforce all other obligations of the tenant, and compels him, at the expiration of his term, to yield the possession to the purchaser. It establishes the relation of landlord and tenant between the parties, and entitles the purchaser to all the remedies applicable to such relation. This being true, it must follow that the mere occupancy of the vendor's tenants cannot operate as a breach of the covenants of the deed." *Kellum v. Berkshire Life Ins. Co.*, 101 Ind. 455.

See, also, 11 Cyc. 1109; 8 Am. & Eng. Ency. Law (2d ed), 129; *Sidders v. Riley*, 22 Ill. 109; *Haldane v. Sweet*, 55 Mich. 196, 20 N. W. 902; Maupin, Marketable Title to Real Estate, § 125.

We go no further than to hold that, where a lease is outstanding, of which the grantee had knowledge, followed by an attornment and an apportionment of the rent at the time of transfer, an action for breach of the covenant of warranty cannot be maintained.

Finding no error, the judgment of the lower court is affirmed.

MOUNT, C. J., GOSE, PARKER, and CROW, JJ., concur.