## FISHER v. STAR CO.

(Supreme Court, Special Term, New York County.   August 14, 1916.)

Action by Harry C. Fisher against the Star Company.   Decree for plaintiff.

Charles E. Kelley, of New York City, for Fisher.

William A. De Ford, of New York City (Bainbridge Colby, David Gerber, and Nathan Burkan, all of New York City, of counsel), for Star Co.

GREENBAUM, J.   For the reasons stated in the opinion filed in Star Co. v. Wheeler Syndicate, 160 N. Y. Supp. 689, a decree will be entered in favor of plaintiff.

---

## WHEELER SYNDICATE, Inc., v. STAR CO.

(Supreme Court, Special Term, New York County.   August 14, 1916.)

Action by the Wheeler Syndicate, Incorporated, against the Star Company. Decree for plaintiff.

Charles E. Kelley, of New York City, for Wheeler Syndicate, Inc.

William A. De Ford, of New York City (Bainbridge Colby, David Gerber, and Nathan Burkan, all of New York City, of counsel), for Star Co.

GREENBAUM, J.   Upon the opinion filed this day in Star Co. v. Wheeler Syndicate, 160 N. Y. Supp. 689, a decree will be entered in favor of plaintiff.

---

(96 Misc. Rep. 213)

## ONONDAGA GOLF AND COUNTRY CLUB v. SYRACUSE & S. R. CO.

(Supreme Court, Equity Term, Onondaga County.   June, 1916.)

1. CARRIERS ⊙═249—CARRIAGE OF PASSENGERS—VALIDITY OF SPECIAL CONTRACT.

At common law, a carrier which charged the general public only reasonable fares was not precluded from charging particular customers still lower fares.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 999; Dec. Dig. ⊙═249.]

2. CARRIERS ⊙═12(4)—REGULATION—CHARGES—PASSENGER RATES.

Under Public Service Commissions Law (Consol. Laws, c. 48), § 31, providing that a carrier shall charge the same compensation for the same service, etc., a contract, insuring club members a lower fare than the general public, is void if made after the law became effective.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 10, 15–20; Dec. Dig. ⊙═12(4).]

3. CARRIERS ⊙═12(1)—FARES—REGULATION—LEGISLATIVE POWER.

The Legislature's power to regulate railroad fares is not limited by a contract previously made between a railroad and one of its patrons.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7, 15–20; Dec. Dig. ⊙═12(1).]

4. CARRIERS ⊙═258—REGULATIONS—FARES—EFFECT OF REGULATION ON PRIOR CONTRACT.

Where a contract insured club members a certain fare, but, upon passage of the Public Service Commission Law, the carrier filed tariffs,

---

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

charging the general public a higher fare, *held* that the contract, although valid when made, was invalidated.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1035, 1036; Dec. Dig. ☞258.]

Action by the Onondaga Golf and Country Club against the Syracuse & Suburban Railroad Company. Judgment for defendant.

Baldwin & Magee, of Syracuse (Nathan L. Miller, of Syracuse, of counsel), for plaintiff.

Gannon, Spencer & Michell, of Syracuse, for defendant.

HUBBS, J. [1] The test for determining whether or not an agreement between a common carrier and a shipper or passenger fixing a rate lower than the ordinary rate was a legal agreement under the common law seems to have been fairly well settled by the decisions in this state and in the United States courts. The test, as I understand it, was substantially this: If on competent and sufficient evidence the trial court found as a fact that the general and ordinary rate, the highest rate charged the general public, was a fair and reasonable rate, contracts for a lower rate made with a "particular customer or class of customers in isolated cases for special reasons and upon special conditions" were not void as a matter of law. The inquiry was whether or not the general rate was a fair, just, and reasonable one; if so, then the carrier might lawfully make a special contract with a particular customer for a lower rate. As long as the general rate was for only a fair compensation for the services rendered, the carrier could make a lawful contract to carry for a particular person or class for even less than a fair compensation, if it desired so to do. Lough et al. v. Outerbridge et al., 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674, 42 Am. St. Rep. 712; N. Y. Tel. Co. v. Siegel-Cooper Co., 202 N. Y. 502, 96 N. E. 109, 36 L. R. A. 560.

Under the common law the contract in question was a legal contract, and could be enforced in this action. I have no hesitancy in finding as a fact that the contract gave no undue advantage to the club members through undue disadvantage to the other patrons of the defendant's road; that the discrimination was not unjust or unreasonable; that the contract was made upon a sufficient consideration with a reasonable basis therefor; that it has operated to the advantage of the defendant's road by insuring a permanent increase in its business; and that it has worked no injustice to any other patrons of the road.

If it were not for the Public Service Commissions Law of this state there would be no trouble in granting to the plaintiff the relief prayed for in the complaint. The common-law rule, stated above, for determining the validity of contracts for a rate lower than the ordinary rate was the subject of severe criticism. It was argued that the test of validity should not be whether or not the general rate was a reasonable one and only fair compensation for the services rendered, but that the test should be whether or not all received the same rate for the same services; that any preference to any person or class, whereby that person or class received a lower rate than all other persons or classes for a like service, should be unlawful. It was in response to

public opinion created by such arguments that the federal Interstate Commerce Act (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379) and the Public Service Commissions Law of this state were enacted.

At the time the contract in question was entered into the one-way fare from Syracuse to plaintiff's clubhouse was 15 cents and the round-trip fare was 25 cents. The contract provided for a round trip fare to the club members of 15 cents. The regular fare to the clubhouse charged by defendant at the time of the commencement of the action was the same as when the contract was made. The schedule of fares had been duly posted and approved by the Public Service Commission.

It is the contention of defendant that the Public Service Commissions Law prevents the defendant from carrying the members of the club at any lower rate, even though it made a contract to do so before the passage of said law, and though the contract was perfectly legal and binding when made and could be enforced in this action were it not for such statute. If defendant is correct in such contention, this action must fail.

[2] It must be conceded that if the contract in question had been entered into after the Public Service Commissions Law (chapter 480 of the Laws of 1910, being chapter 48 of the Consolidated Laws) went into effect, the contract would be illegal and in violation of said act. Section 31 of said act provides that no common carrier shall charge or receive any greater or less compensation from one than it charges or receives from another for like and contemporaneous service under the same circumstances and conditions. This statute clearly changes the common-law rule for determining whether or not a contract for a reduced rate is legal. Under this act a contract is illegal if it provides for a lower or different rate to one person than to another, without regard to the question as to whether or not the highest rate charged is a fair and reasonable one, constituting only just compensation for the services rendered. The act completely reverses the common-law rule as established in this state, and was enacted for the very purpose of accomplishing that result. N. Y. C. & H. R. R. Co. v. Smith, 62 Misc. Rep. 526, 115 N. Y. Supp. 838; N. Y. C. & H. R. R. Co. v. Shelmidine, 91 Misc. Rep. 226, 154 N. Y. Supp. 235; B. & O. R. R. Co. v. La Due, 128 App. Div. 594, 112 N. Y. Supp. 530. So that, if the act in question applies to this contract, the question as whether or not the agreement provides an unjust discrimination ceases to be a matter of inquiry.

[3] The Legislature could legally enact the Public Service Commissions Law and require railroads to file schedules of rates, and charge all patrons the rates as fixed. The Legislature may control and regulate the fare to be charged by railroads under the so-called police power. That power of the Legislature cannot be limited by a contract between a railroad company and one of its patrons. Where the Legislature has passed a statute which makes a prior contract between a common carrier and a patron illegal, the carrier cannot be compelled to fullfill its covenant under such contract. Buffalo East Side R. R. Co. v. Buffalo Street R. R. Co., 111 N. Y. 132, 19 N. E. 63, 2 L. R. A. 284; People v. Budd, 117 N. Y. 1, 22 N. E. 670, 682, 5 L. R. A. 559, 15

Am. St. Rep. 460; Louisville & N. R. R. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671. See note to Armour Packing Co. v. United States, 52 L. Ed. 681.

[4] It would seem, therefore, that, although the contract in question was valid in its inception, it became unenforceable upon the enactment of the Public Service Commissions Law, and that it cannot now be enforced in a court of equity.

Plaintiff's counsel earnestly argued upon the submission of the case and in the brief filed that the defendant, by its own act in fixing the general rate and filing the schedule required by the Public Service Commissions Law, could not make its contract invalid; that it could have fixed the rate for all patrons to conform to that provided for by the agreement, and thereby have saved the contract; and that defendant should not, by its own wrong, be permitted to escape its just and legal obligation. There is great force in that argument, and it appeals to one's sense of justice as applied to the facts of the particular case. The argument so forcefully advanced by plaintiff's counsel was urged in the case of Armour Packing Co. v. U. S., 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681, and such argument was stated by Justice Brewer in his dissenting opinion with great force and clearness. The prevailing opinion by Justice Day is to the contrary, however, and should be followed by this court. The provisions of the two acts are nearly alike; they were enacted in obedience to the same public demand, and they were intended to accomplish the same end. The decisions of the United States courts and the reasons therefor apply to the construction of the state act, and it has been so held in all reported cases where the question has been raised in this state. N. Y. C. & H. R. R. Co. v. Smith, 62 Misc. Rep. 526, 115 N. Y. Supp. 838; N. Y. C. & H. R. R. Co. v. Shelmidine, 91 Misc. Rep. 226, 154 N. Y. Supp. 235; Tucker v. Western Union Tel. Co., 95 Misc. Rep. 288, 158 N. Y. Supp. 959.

Judgment is therefore ordered for the defendant, with costs.