## HELENA LIGHT & RY. CO., APPELLANT, *v.* NORTHERN PACIFIC RY. CO., RESPONDENT.

(No. 4,063.)

(Submitted December 12, 1919.   Decided January 2, 1920.)

[186 Pac. 702.]

*Contracts—Lease—Renewal—Extension — Electricity — Public Utility Act—Statutory Construction—Presumptions.*

Contracts—Undisclosed Motive or Inducement—Effect on Contract.

1.   A motive for entering into a written contract, or an inducing cause in the mind of one of the parties to it, undisclosed to the other, cannot after its execution be read into it as a part of the consideration.

Same—Intent of Parties—When Material.

2.   The circumstances under which a contract was made, or the intent of the parties at the time, are only material when the contract is ambiguous in some of its terms.

Same—Lease—Electricity—What not Breach.

3.   Where a contract between a railway company and an electric light and power company obligated the latter to deliver to the former such an amount of electric current as the railway company might require at certain points on its line of road, but did not make it obligatory upon the latter company to receive current at each of the points enumerated, the abandonment of the use of electric power at one of such points was not a breach of the contract.

Same—Renewal—Extension—Definition.

4.   An option to renew a contract is the right to require the execution of a new one—which does not constitute a present demise; an option to extend is a present demise which operates to extend the term of the original agreement, which then becomes a contract for both the original and extended term.

Same—Construction.

5.   In construing provisions of a contract of the nature referred to in paragraph 3 above, which provided, among other things, for its "renewal" in a certain event, courts look to the reading of the entire agreement and to the practical construction given to it by the parties themselves, rather than to the phraseology used.

Same—Courts will Uphold.

6.   If upon a reasonable construction contracts may be upheld, courts will uphold them.

Same—Option to Renew—Nature of Right.

7.   An option to renew a contract of lease by giving proper notice prior to the expiration of the term fixed was a substantial right acquired by the lessee as a part of the original contract, and constituted a substantial obligation on the part of the lessor.

Same—Renewal—Extension—Nature of Privilege.

8.   Defendant railway company was given the right to "renew" a contract with an electric light and power company for light and power for an additional term of five years on giving thirty days' notice before expiration of the first term.   The power company had not bound itself to execute a new contract and the railway company did not demand one, but gave the required notice at the proper time.   *Held*, that the

notice given had the effect of extending the original contract for the additional term, and that the contract then became one for the original and the extended term—a demise *in praesenti* as of the date of the original contract.

Same—Renewal—Extends to What Clauses of Contract.

9.    A renewal or extension of a contract of the nature of the above, under like provisions, extends the contract with respect to all of its terms and conditions, except the one referring to the extension clause; and hence is not objectionable as creating a perpetuity.

Same—Electricity—Public Utility Act—Effect on Existing Contracts.

10.    *Held,* that since section 12 of the Public Utility Act (Chap. 52, Laws of 1913) exempts from the operation of the Act all "existing contracts," and does not exclude from the provisions of the exempting clause renewals or extensions of such contracts, the renewal or extension of the contract referred to in paragraph 8, *supra,* which contract was executed before the passage of the Act and would have expired after it went into effect but for its extension, was not unlawful. (MR. JUSTICE HOLLOWAY dissenting.)

Same—Impairment of Obligation—Constitution.

11.    An Act which, in any degree, modifies the obligation of a contract, by attempting to relieve one party from a duty assumed under it, is repugnant to the constitutional prohibition against the impairment of the obligation of contracts.

Statutes and Statutory Construction—Presumptions.

12.    The legislature is presumed to have understood the meaning of the words used in legislation, and that the words used were used in the common and ordinary meaning.

*Appeal from District Court of Lewis and Clark County; R. Lee Word, Judge.*

ACTION by the Helena Light & Railway Company against the Northern Pacific Railway Company. Judgment for defendant. Plaintiff appeals. Affirmed.

*Mr. Odell W. McConnell,* for Appellant, submitted a brief and argued the cause orally.

The promises in the contract in controversy are mutual and dependent. The plaintiff agreed to furnish power; the defendant agreed to take power. "The courts at the present day incline strongly against the construction of promises as independent, and in the absence of clear language to the contrary promises which form the consideration for each other will be held to be concurrent or dependent and not independent, so that a failure of one party to perform will discharge the other; so that one cannot maintain an action against the other without showing performance or a tender of performance on his

part." (9 Cyc. 643.) Since the decision of the leading case in England of *Hoare* v. *Rennie,* 5 Hurl. & N. 19, it has been held that the breach of an entire contract by one party gives the other the right of rescission. In *Mersey Steel & Iron Co.* v. *Naylor etc. Co.,* 9 App. Cas. 434, the House of Lords held that if one party to a contract refuses absolutely to pay for a part of the goods contracted for, the other party may rescind. The American courts have followed the doctrine above stated. (*Norrington* v. *Wright,* 115 U. S. 188, 29 L. Ed. 366, 6 Sup. Ct. Rep. 12.) This rule should certainly work both ways. (See, also, *Baker* v. *Higgins,* 21 N. Y. 397; *Clark* v. *Wheeling Steel Works,* 53 Fed. 494, 3 C. C. A. 600; *Blackburn* v. *Reilly,* 47 N. J. L. 290, 54 Am. Rep. 159, 1 Atl. 27.)

In this case the defendant railway company has certainly evinced an intention no longer to be bound by the terms of the contract in refusing to accept or pay for any more power at the pumping station. (Clark on Contracts, p. 660.)

Even if the contract is divisible, the power company is entitled to rescind, for the reason that the railway company broke a portion of the contract deliberately and intentionally. "A party to a contract not in default may terminate it on the failure of the other to comply with it in matters which are of the substance thereof, though the default is not of such nature as to defeat its whole purpose." (*Ballance* v. *Vanuxem,* 191 Ill. 319, 61 N. E. 85.) Plaintiff did not insist upon a forfeiture of the contract when the railway company ceased to use power. The mere fact that it did not insist upon the forfeiture does not prevent it from refusing a renewal of the contract. (*Swift* v. *Occidental Mining etc. Co.,* 141 Cal. 161, 74 Pac. 700; *Behrman* v. *Barto,* 54 Cal. 131.)

If there is to be a renewal of the contract, it would have to be renewed in the same terms as the old one, which the defendant expressly says is not to be done. "A general covenant to renew ✻ ✻ ✻ imports a new lease like the old one upon the same terms and conditions." (24 Cyc. 991.) The defendant has given up a portion of the contract; it does not want it any

more.   It has abandoned the use of the contract for power and simply wants to use it for lighting only.   It cannot abandon a portion of the contract and take it as to the rest.   "After a voluntary surrender of a part of the promises, the tenant cannot insist upon a renewal of the lease as to the balance." (*Barge* v. *Schiek,* 57 Minn. 155, 58 N. W. 874.)

Since the contract in question was entered into on the third of December, 1909, a statute has been enacted declaring it to be unlawful for any public utility, such as the plaintiff, to grant any concession or special privilege or make any charge for service at any different rate than that fixed by the Public Service Commission.   If the contract now sought by the defendant is entered into, it will be in direct violation of this statute, because the rates as fixed by the Public Service Commission are not the same as those contained in the agreement, the latter being much lower.   This contract, if renewed, would give the railway company an undue and unreasonable preference.   All contracts entered into are subject to the laws of the state where made.

A case similar to the one at bar is that of the *Public Service Electric Co.* v. *Board of Public Utility Commrs.,* 87 N. J. L. 128, 93 Atl. 707.   In that case the electric company had agreed to furnish, and was furnishing, the city of Plainfield with electric lights in its public buildings for the consideration of the city allowing the company to place its poles on its streets.   For five years the company continued to do this until a statute similar to the one we have was passed, which rendered such a contract unlawful.   The supreme court of New Jersey, in that case, said: "We think, however, that the Public Utilities Act in forbidding discrimination made the performance of this contract unlawful, and that, therefore, the prosecutor could not continue to perform the contract without being guilty of a violation of that statute."   (Pollock on Contracts, 406; Pomeroy on Contracts, 280; Parsons on Contracts, 675; *Louisville & Nashville Ry. Co.* v. *Mottley,* 219 U. S. 467, 34 L. R. A. (n. s.) 671, 55 L. Ed. 297, 31 Sup. Ct. Rep. 265 [see, also, Rose's U. S. Notes].)

*Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

In the agreed statement of facts it is admitted that the inducing cause or reason for entering into the contract by the plaintiff at the rates named was that the defendant was to use electric current and power at its pumping station.   This admission is made subject to the right of the defendant to object to the competency, immateriality and admissibility thereof.   The plaintiff further admits, however, that it "did not state to the defendant what the inducing cause or reason was for entering into said contract"; it also admits that defendant made no representation as to the amount, time, manner or places of using the current other than the statements in the contract contained. For this reason the defendant had no knowledge of what was the inducing cause or reason for the plaintiff entering into such contract, and is not in a position, therefore, to deny that such was the inducing cause or reason, as the same was never communicated to the defendant.   Therefore, while the defendant admits, subject to objection, that such was an inducing cause or reason, unexpressed by the plaintiff at the time of making the contract, we insist that the same is wholly incompetent, immaterial and inadmissible for the purpose of showing failure of consideration, modifying the terms of this contract, or for any other purpose under the statutes and decisions of this state.

The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.   (Rev. Codes, secs. 5018, 7873; *Kelly* v. *Ellis,* 39 Mont. 597, 104 Pac. 873; *Armington* v. *Stelle,* 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115; *Riddell* v. *Peck W. etc. Co.,* 27 Mont. 44, 69 Pac. 241; *Ford* v. *Drake,* 46 Mont. 314, 127 Pac. 1019; *Board of Education* v. *Grant,* 118 Cal. 39, 50 Pac. 5.)

The cause or motive in inducing a party to enter into a contract, particularly where it is not communicated to the other party thereto, is no part of the consideration, and the fail-

57 Mont.—7

ure of such inducing cause does not affect the validity of the contract nor relieve the parties from liability thereon. Consideration is distinguished from the motive for entering into a contract. (Elliott on Contracts, sec. 204; *Philpot* v. *Gruninger*, 14 Wall. (U. S.) 570, 20 L. Ed. 743 [see, also, Rose's U. S. Notes] ; 9 Cyc. 320; Page on Contracts, sec. 155.)

The fact that the defendant did not disclose to the plaintiff the manner in which it intended to use such electric current, or the fact that it said nothing on the subject other than the terms expressed in the written contract, cannot affect the validity of the contract. (Elliott on Contracts, sec. 121; Page on Contracts, sec. 157.)

There is nothing in the terms of the contract which required the defendant to use electric current at the pumping station at all times, or to use any electric current other than such as it "may require," and so long as it paid for the current it actually used at the rates named in said contract, it was complying therewith. (*McKeever* v. *Canonsburg Iron Co.* (*Canonsburg Iron Co.* v. *McKeever*), 138 Pa. St. 184, 16 Atl. 97, 20 Atl. 938; *Brawley* v. *United States*, 96 U. S. 168, 24 L. Ed. 622 [see, also, Rose's U. S. Notes] ; *Albany Power & Mfg. Co.* v. *City of Albany*, 133 Ga. 375, 65 S. E. 886.)

In *Laclede Power Co.* v. *Stillwell*, 97 Mo. App. 258, 71 S. W. 380 (a case cited and quoted from by appellant), the court construed a contract to furnish electric light. The difference in the language of that contract and the one here involved clearly shows the infirmity in the construction which the plaintiff now seeks to place upon this contract. In fact, the language of the opinion shows that had the contract there construed been worded as the one in this case, the court would have sustained the position of the company purchasing the current. (See, also, *Winslow* v. *Plimpton*, 134 Mass. 44.)

This provision of the contract, reserving to defendant the right to renew the contract upon giving thirty days' notice prior to expiration thereof, does not call for nor require a new contract and the defendant did not ask for a new or different

contract. The defendant's contention is that the contract entered into prior to the enactment of Chapter 52 of the Laws of 1913, containing the provision for the renewal thereof at the option of the defendant, is a continuing contract and still in force so long as the defendant exercised the option given it by the original contract to extend the same for an additional five year period. A covenant of renewal or right to continue a lease is a substantial part of the whole contract, and must be construed as one of the material considerations which led to its execution. (See cases cited in opinion.)

That no new lease is required when the original lease gives the lessee the option to renew for an additional term, see, also, *Sanders* v. *Middleton,* 112 Me. 433, 92 Atl. 488; *Kean* v. *Story & Clark Piano Co.,* 121 Minn. 198, 140 N. W. 1031.

Even if the abandonment of the pumping station was a breach of the contract, which would have entitled plaintiff to declare a forfeiture or to rescind the same, such breach did not in itself forfeit or rescind the contract, and if the contract was still in force when defendant elected to continue for the additional period and gave notice of such election as required by the contract, then the plaintiff is bound thereby, and cannot thereafter declare a forfeiture or rescind for something that occurred prior to receiving the notice of election to continue the contract. (*Keene* v. *Zindorf,* 81 Wash. 152, 142 Pac. 484; *Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136; 24 Cyc. 1357, 1359, 1361.) The acceptance of rent after a breach of the contract, known to the lessor, constitutes a waiver of such breach. (24 Cyc. 1361.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff instituted this action to recover from the defendant the sum of $1,016.75, alleged to be due for electricity furnished for lights and power during the months of May, June and July of the year 1915, at its special instance and request. The respondent admits the use and consumption of the electricity as alleged, but contends that said electricity was fur-

nished and was used, under a contract entered into between the parties hereto in the year 1910, under and by the terms of which the amount due was $494.50, which amount respondent duly tendered to appellant, when due.

The case was tried in the district court on an agreed statement of facts, from which it appears:

1. That on the third day of December, 1909, appellant and respondent entered into a written contract by the terms of which the appellant agreed to furnish to the respondent "all the electric current the railway company may require for lighting and power purposes at its pumping station—approximately two and a half miles west of the Northern Pacific Passenger Station, and at its roundhouse, machine-shop, car-shop, coal dock, passenger and freight stations, lunch-room, offices and other buildings and premises at Helena, Montana."

2. This contract or agreement was to continue in force for a term of five years from the date of the installation of the secondary lighting and power systems of the company, which installation was not completed until April 30, 1910.

3. The contract further provided that the railway company reserved the right, at its option, upon giving the power company thirty days' written notice prior to the expiration of the contract, "to renew the same for an additional period of five years."

4. The rates fixed by the contract for electric current for power and light were about one-third the regular rates in effect in the months of May, June and July, 1915.

5. It is agreed that "the inducing cause or reason for entering into such a contract by the plaintiff at the rates for electric current therein named was that the defendant was to use electric current and power at its pumping station—but the plaintiff did not state to the defendant what the inducing cause or reason was for entering into the contract."

6. The agreed statement of facts recited further "that at or prior to the making of said contract neither the defendant nor its agent or representatives made any statement or representa-

tion to the plaintiff, or its agents or representatives, regarding the amount of electric current to be used, or the time, manner or places of using said electric current, other than the statements and representations in said contract contained.''

7. The power company performed its part of the contract, and in doing so expended the sum of $948.78, in erecting a system to supply the current at the pumping station.

8. The railway company lived up to the terms of its agreement in all particulars, save and except that on or about November 27, 1913, it abandoned its pumping station, and consequently, since that date has used no electric current at or for the pumping station, which fact was known to the power company within thirty days thereafter, and no objection or protest was made by the power company to such abandonment or discontinuance of the use of electric current at the pumping station, but continued to furnish, and collect for, electric current, as formerly under the contract.

9. That on the twenty-first day of January, 1915, and within the time provided for in the contract, respondent notified appellant in writing that it desired to renew the contract for the additional term of five years under the option contained in the contract.

10. On April 28, 1915, the appellant notified respondent in writing that it would not renew the contract, on the ground that the respondent was ''guilty of a breach of the contract in part during its existence''; the breach, as stated in the notice, consisted in the abandonment of the pumping station and the discontinuance of the use of electric current at that point, which, the notice recites, ''was one of the principal items of the contract and greatly influenced in making the reduced rate''; and, continuing, said notice advised the railway company that from and after May 1, the power company would furnish light and power to the railway company at the rates regularly filed with the Public Service Commission.

11. It is further agreed that the current used by respondent at the pumping station amounted to 24½ per cent of the electricity used by respondent under the contract.

The court found in favor of the railway company and rendered judgment but for the amount due under the contract, and entered its decree to the effect that the contract in question had been duly extended and continued for the additional term of five years. The appeal is from the judgment.

The question here presented is: Was there, during the months of May, June and July, 1915, a valid and existing contract in full force and effect? Appellant contends that the contract was one which could not be renewed, for the following reasons:

1. That the respondent company violated the terms of the contract by abandoning its pumping station and its refusal to take any power.

2. A renewal of a portion of the contract only is desired.

3. Such contract is unlawful under the present statute.

We will take the matters suggested up in order and under the subheads employed in appellant's brief.

1. The "inducing cause" referred to in the statement of facts **[1]** is relied upon to establish a breach of the contract. The contract was complete in itself, the result of the meeting of the minds of the contracting parties, and the obligations of each, as expressed, depend upon the corresponding obligations of the other, and on no extrinsic matter. (9 Cyc. 643.) Being in writing, the contract supersedes all oral stipulations of the parties. (Rev. Codes, secs. 5018, 7873.) This being so, it cannot be said that an inducing cause, in the mind of one of the contracting parties, undisclosed to the other, can thereafter be read into the contract as a part of the consideration for its execution.

Counsel contends that courts must give to a contract such a construction as was within the contemplation of the parties at the time they entered into it. This is true, but an "inducing cause" or motive, hidden in the breast of one, does not come within the rule. This court has said, in the case of *Armington* v. *Stelle*, 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115: "Even if everything that was said and done at the time the lease was executed by the defendants were admissible, as defendants contend, for the purpose of showing what the con-

tract actually was, the unexpressed motive or mental reserva-
tion entertained by the defendants could not aid the court in
arriving at a correct conclusion, nor could the defendants be
permitted to testify to it in order to modify or add to the
express words of their contract.''

Mr. Elliott, in his work on Contracts, section 204, has this
to say on the subject: ''The 'motive' for entering into a con-
tract and the 'consideration' of the contract, are not the same.
An expectation of certain results is often the motive which leads
to the formation of a contract, but neither the expectation nor
the result necessarily makes the contract binding.  Nothing is
consideration that is not regarded as such by both parties.''

Here, there was no representation by the railway company
as to continuous use of electric current at any one point desig-
nated in the contract, and if the agents of the power company
labored under an erroneous opinion of the value of the contract
by reason of the contemplated use of current at the pumping
station, uncommunicated to the railway company, the courts are
powerless to assist or relieve appellant.

''Whatever may be thought of the propriety, from a moral
standpoint, of holding a person to a contract into which he
entered under a mistake as to a collateral material fact, the
law is confronted with the necessity of adopting a rule which
will make it possible to enforce contracts at all.  Accordingly,
the rule adopted by the great weight of authority is that mere
mistake in the inducement is not operative and that a contract
induced by reason thereof is perfectly enforceable and valid.
A mistake of this sort is 'an error for which the law furnishes
no relief.' '' (Page on Contracts, sec. 155; see, also, 9 Cyc.
320; *Philpot* v. *Grunninger,* 14 Wall. 570, 20 L. Ed. 743 [see,
also, Rose's U. S. Notes]; *Peck Colorado Co.* v. *Stratton,* 95
Fed. 741; *Levy & Kohn Mule Co.* v. *Kaufman,* 114 Fed. 170,
52 C. C. A. 126; *Armington* v. *Stelle, supra; Cream of Wheat
Co.* v. *Crist Co.,* 222 N. Y. 487, 119 N. E. 74.)

The circumstances under which a contract is made, or the
[2]  intent of the parties existing at the time, are only mate-

rial when the contract is ambiguous in some of its terms. (*Bullard* v. *Smith*, 28 Mont. 387, 72 Pac. 761; *Quirk* v. *Rich*, 40 Mont. 552, 107 Pac. 821; *Ming* v. *Pratt*, 22 Mont. 262, 56 Pac. 279.)

2. *New Contract.* It is admitted by respondent that, if the contract is renewed, it does not desire to renew in so far as the use of electric current for power purposes at the pumping station is concerned. This, appellant contends, calls for a new and different contract from that originally entered into.

The contract set out in the answer obligates the appellant [3] to deliver to the railway company such an amount of electric current as the railway company may require for lighting and power at its pumping station, its roundhouse, machineshops, car-shops, coal docks, passenger and freight depots and other buildings, at specified rates fixed by the contract, and the railway company to pay therefor in accordance with the amount of such electric current received each month. The enumeration of the points at which the electric current is to be delivered is for the information and guidance of the power company, as to where it will be required to furnish such electric current as the railway company will require; the contract does not obligate the railway company to receive electric current at each of the points enumerated, but only such electric current as it shall require at any or all of the points enumerated, during the life of the contract. The several points stated stand on equal footing. The power company cannot be heard to complain if it transpires that the railway company does not require as much current as it anticipated would be used, or that the railway company did not require current at any one point so enumerated. Were it otherwise, under the contract here under consideration, the power company could, with as much reason, complain that the railway company did not use sufficient current at any given point to make it profitable to supply current at that point. The fallacy of the position is apparent from appellant's contention that, though little or much current is used, some current must be consumed at the pumping station;

in other words, the abandonment of the pumping station constituted a breach of the contract, but the maintenance of a one Watt electric light there would not.

Respondent's notice of renewal is silent as to the pumping station and declares generally its intention of exercising, and the exercise of the option to renew the contract, and evidences the intention of the respondent to continue to use all of the electric current required by it for lighting and power purposes.

Appellant contends that there is evidenced an abandonment of the use of power and only an intention to use current for lighting purposes; the facts stipulated do not bear out this contention. From the contract and from the agreed statement of facts, it would appear clearly that the use of electric current at the roundhouse, machine-shop, car-shop, coal docks, passenger and freight depots and other buildings, was "for lighting and power," without regard to the amount of current required for either purpose.

We are of the opinion that the abandonment of the pumping station was not a breach of the contract as executed between the parties hereto, and that, if a renewal could be effected, the renewal was of the contract *in toto* and not a renewal in part.

3. *Contract Unlawful.* Section 12, Chapter 52, of the Session Laws of 1913, makes it unlawful for any public utility to make rates to any person or corporation differing from those contained in their schedule filed with the Public Service Commission, but provides that the Act shall not have the effect of suspending, invalidating or in any way affecting existing contracts.

The original contract was executed before the passage of the Public Utility Act of 1913, its expiration date and attempted renewal under the option subsequent thereto. It therefore becomes important to determine whether the option called for the execution of a new contract or the extension of the original term of the contract for an additional five years. In other words, would the contract, after the exercise of the privilege contained in the option, come within the exception contained in the final clause of section 12 of the Public Utility Act?

There is a clear distinction drawn by the authorities between **[4]** an option "to renew" a lease or a contract and an option "to extend" the term for a like or given period, the first being considered the right to require the execution of a new lease or contract, which does not constitute a present demise; while the latter is considered a present demise which operates to extend the term of the original agreement, which then becomes a contract for both the original and the extended term. (24 Cyc. 1008; 16 R. C. L. 389; 32 Century Dig., secs. 270–275.) The **[5]** contract here being in the nature of a lease by the power company to the railway company of a certain amount of its electric current, the cases construing like provisions in leases are pertinent to the question. In construing such provisions, the courts look to the reading of the entire contract and to the practical construction given to it by the parties themselves, rather than to the phraseology used. (*Wiener* v. *Graff,* 7 Cal. App. 580, 95 Pac. 167; *Shamp* v. *White,* 106 Cal. 220, 39 Pac. 537; *Howell* v. *City of Hamburg Co.,* 165 Cal. 174, 131 Pac. 130; *Butte Water Co.* v. *City of Butte,* 48 Mont. 386, 138 Pac. 195; *Robertson* v. *Drew,* 34 Cal. App. 143, 166 Pac. 838; *Skinner* v. *Davis,* 104 Kan. 467, 179 Pac. 359; *Briggs* v. *Chase,* 105 Me. 317, 74 Atl. 796; *Pflum* v. *Spencer,* 123 App. Div. 742, 108 N. Y. Supp. 344; *Mattlage* v. *McGuire,* 59 Misc. Rep. 28, 111 N. Y. Supp. 1083; *Ferguson* v. *Jackson,* 180 Mass. 557, 62 N. E. 965; *Kentucky Lumber Co.* v. *Newell,* 32 Ky. Law Rep. 396, 105 S. W. 972; *Sanders* v. *Middleton,* 112 Me. 433, 92 Atl. 488; *Kean* v. *Story & Clark Piano Co.,* 121 Minn. 198, 140 N. W. 1031; *Sheppard* v. *Rosenkrans,* 109 Wis. 58, 83 Am. St. Rep. 886, 85 N. W. 199; *Hausauer* v. *Dahlman,* 72 Hun, 607, 25 N. Y. Supp. 277.)

In the case of *Howell* v. *City of Hamburg Co., supra,* where the option clause was similar to the one here, the court said: "The authorities fully support the claim of learned counsel for the plaintiff that the covenant for renewal of a lease, at the option of the lessee 'imports the giving of a new lease.' * * * On the other hand, if the lessee is simply given, by the original

lease, the option to retain the premises for a specified additional term, without the execution of any new lease; and when the lessee has given the notice of the exercise of the option * * * he is 'entitled to hold for the additional term under the original lease,' which then becomes a lease 'for both the original and extended terms' "; citing *Wiener* v. *Graff, supra.* "Although the word 'renew' is used in the eighth subdivision of the lease before us, we do not think that the giving of any new lease was within the contemplation of the parties. The *lessor* did not covenant to renew the lease; the language being that 'the privilege is hereby given the *lessee* to renew this lease,' *etc.*, which implies that the notice subsequently provided to be given by the lessee, of his intention to exercise the privilege, was the only thing essential to give the right to the additional term. This was the practical construction given to the provision by the parties; for the defendant did not demand a new lease, and the plaintiff did not give one."

In *Briggs* v. *Chase,* cited above, the court said: "The clauses of the instrument in question are found in the *habendum* which read: 'to have and to hold for the term of one year from the date hereof with the privilege on the part of the said Chase to *renew* at the same rental for any term not exceeding ten years from the expiration of said one year term.' And the following stipulation concerning the right of renewal: 'It is mutually understood that the said right of renewal as stipulated shall be wholly optional with the said Chase, and that said renewal, while in all other respects the same as in this lease, shall contain no further right of renewal except by mutual agreement.' * * * No new lease was called for. * * * It would have been precisely like the original lease except the term. This was left to the lessee. Whatever he might choose—1, 5 or 10 years—would be in exact accord with the contract of the lessor. The plaintiff could insist upon a complete fulfillment. The defendant was equally bound. A new lease would be a useless form. The defendant's election, if he made it, to continue, extended the stipulations of the original lease to his new occupancy. He

continued his tenancy. That the parties contemplated a *present demise* seems to be the only fair inference from their acts, and the other facts and probabilities in the case."

In *Hausauer* v. *Dahlman, supra,* the court said: "The complaint alleged the execution, in writing and under seal, by the defendants of a lease for one year, with the privilege to the plaintiff at their option, to renew the same for four years more at the same annual rental, and on the same conditions, on giving notice three months beforehand. * * * Here was not a mere covenant on the part of the lessor to give a new lease on demand or on certain conditions, but a covenant that the lessees themselves might at their option renew the lease for four years by giving the notice required, which notice was duly given and accepted by the defendants. * * * The covenant in this case, we believe equivalent to a covenant that on giving the required notice, the lease should continue in force for the additional term, and in either case the effect of the notice is, of itself, to create the new term without the execution of a new lease by the lessor." (Citing *Thiebaud* v. *Bank,* 42 Ind. 212; *Dix* v. *Atkins,* 130 Mass. 171; *Ranlet* v. *Cook,* 44 N. H. 512, 84 Am. Dec. 92.)

In *Kentucky Lumber Co.* v. *Newell,* 32 Ky. Law Rep. 396, 105 S. W. 972, cited above, the renewal clause read as follows: "For a period of five years with the privilege of renewal from year to year as long as the second party may want said land," *etc.* The court, in construing the clause said: "The contract, although it uses the word 'renewal' does not contemplate a renewal lease, as that term is used in the law books. The whole instrument, and the nature of the use of the leased lands as provided for in the lease, show that nothing more was contemplated than that the lessee might continue the terms by its mere election and the payment of the rent. The word 'renewal' was evidently used in the sense of extending; it being clearly shown in the document that not another term was to be agreed upon, but that the original term and use were to be extended at the option of the lessee. This is a demise *in praesenti.*"

In *Wiener* v. *Graff,* 7 Cal. App. 580, 95 Pac. 167, cited, the court said: "Upon compliance with the condition as to giving notice, the lessees would then be entitled to hold for the additional term under the original lease and not under the notice— the lease would then become a lease for both the original and the extended terms."

If upon a reasonable construction contracts may be upheld, [6] the courts will uphold them. (*Dallas* v. *Douglas,* 45 Mont. 114, 122 Pac. 275; *Lawson* v. *Cobban,* 38 Mont. 138, 99 Pac. 128.)

Here the railway company was given the option to renew the contract for an additional five years, on giving thirty days' notice to the power company, before the expiration of the contract; in giving notice of its intention to avail itself of the privilege, as in the *Howell Case,* it did not demand a new lease, but stated that "in accordance with the provisions of the contract (it) hereby elects to renew and extend the said contract for the additional period of five years," *etc.* The power company did not, by the terms of the contract, bind itself to execute a new lease, nor could it have been compelled to do so. No new lease was necessary; the rights and obligations of the parties were fixed by the terms of the original contract. The [7] option to renew the contract by giving thirty days' notice prior to the expiration of the term fixed was a substantial right acquired by the respondent as a part of the original contract and a corresponding substantial obligation resting upon the appellant power company. (*Briggs* v. *Chase,* 105 Me. 317, 74 Atl. 796; *Monihon* v. *Wakelin,* 6 Ariz. 225, 56 Pac. 735; *Quade* v. *Fitzloff,* 93 Minn. 115, 100 N. W. 660; *Wright* v. *Kaynor,* 150 Mich. 7, 113 N. W. 779.)

"No question can arise in regard to the consideration. The stipulation that the lessee should have 'the privilege of renewing' was a part of the consideration for which he took the lease, and agreed to pay the sum of $160, per year." (*Briggs* v. *Chase, supra.*)

Being a substantial right and a part of the original contract, [8] supported by the consideration for the original contract, of

which the respondent took advantage within the time prescribed for the exercise of the privilege, the notice given had the effect of extending the original contract for the additional term of five years and the contract then became one for both the original and the extended term; a demise *in praesenti*, as of the date of the original contract. (See authorities cited above, and also *Newhoff* v. *Mayo*, 48 N. J. Eq. 619, 27 Am. St. Rep. 455, 23 Atl. 265; *Sherwood* v. *Gardner*, 2 City Ct. Rep. (N. Y.) 64; *Whitmark* v. *Electric Ry. Co.*, 76 Hun, 302, 27 N. Y. Supp. 777.)

It is objected that such a construction would create a per-
**[9]** petuity by extending the contract even as to the clause for renewal. Here again the contract must be interpreted according to the intention of the parties. No such intention can be gathered from the reading of the contract; but one renewal is provided for and but one intended, and the authorities uniformly hold that a renewal or extension, under like provisions, extends the contract with respect to all of its terms and conditions, with the exception of the extension clause. (*Rutgers* v. *Hunter*, 6 Johns. Ch. (N. Y.) 215; *Piggot* v. *Mason*, 1 Paige (N. Y.), 412; *Ryder* v. *Jenny*, 25 N. Y. Super. Ct. 56; *Muhlenbrinck* v. *Pooler*, 40 Hun (N. Y.), 526.)

Counsel for appellant contends that the Public Utility Act
**[10, 11]** makes the renewal or extension of this contract for the additional five years unlawful, and cites in support of his contention, *Public Service El. Co.* v. *Board of Public Utility Co.*, 87 N. J. L. 128, 93 Atl. 707, and *Louisville & Nashville R. Co.* v. *Mottley*, 219 U. S. 485, 34 L. R. A. (n. s.) 671, 55 L. Ed. 297, 31 Sup. Ct. Rep. 265 [see, also, Rose's U. S. Notes]. The law construed in the cases cited contains no such provision as we have in section 12 of our Public Utility Act. The legislature saw fit to provide in the final clause of that section, that: "This, however, does not have the effect of suspending, rescinding, invalidating or in any way affecting existing contracts." This provision was, presumably, inserted upon the theory that an attempt to bring existing contracts within the purview of the statute would be in contravention of the federal constitu-

tional prohibition against impairing the obligation of contracts. It has since been decided, however, that: "The law is well settled that an unexpired contract does not authorize a public service company to charge a less rate for service rendered than that prescribed by effective schedules." *People ex rel. N. Y. Steam Co.* v. *Straus* (1919), 186 App. Div. 787, 174 N. Y. Supp. 868, where the court declared that "the fundamental theory of the Public Service Commission law is that there shall be but one rate for the same service"; citing *Armour P. Co.* v. *United States,* 209 U. S. 56, 52 L. Ed. 681, 28 Sup. Ct. Rep. 428; *New Haven Ry. Co.* v. *Interstate Commerce Commission,* 200 U. S. 399, 50 L. Ed. 515, 26 Sup. Ct. Rep. 272; *Louisville & Nashville Ry. Co.* v. *Mottley,* 219 U. S. 467, 55 L. Ed. 297, 31 Sup. Ct. Rep. 265, 34 L. R. A. (n. s.) 611; *Portland Ry. Co.* v. *Oregon Railroad Com.,* 229 U. S. 397, 57 L. Ed. 1248, 33 Sup. Ct. Rep. 820 [see, also, Rose's U. S. Notes]; *Onondaga Golf & Co. Club* v. *Syracuse Int. Ry. Co.,* 96 Misc. Rep. 213, 160 N. Y. Supp. 693. (See, also, to the same effect, *Pennsylvania Ry. Co.* v. *Titus,* 156 App. Div. 830, 142 N. Y. Supp. 43; *Baltimore & Ohio Ry. Co.* v. *La Due,* 128 App. Div. 594, 112 N. Y. Supp. 964. In no one of the cases cited, however, did the law under consideration exempt from the operation "existing contracts." The rule is declared in these cases to be that "the law makes no distinction in favor of special contracts, nor does it exempt them from the operation of the statute." But our statute *does* exempt from the operation thereof all "existing contracts." What, then, is meant by the term "existing contracts"? We have no means of determining the legislative intent in the use of the phrase, and the authorities on the subject are necessarily meager. In the case of *Whitaker* v. *Rice & Becker,* 9 Minn. 13, 86 Am. Dec. 78, it is said that "a contract once made is an existing contract until it is paid or barred by the statute of limitations, or its obligation in some other way canceled." Under the rule that a conveyance with the intent to defraud is void as to "existing obligations," it has been held that the liability of a principal to indemnify a surety on a bond is an

"existing obligation" before default or. the bond.  (*Graeber* v. *Sides*, 151 N. C. 596, 66 S. E. 600.)  In *Richardson* v. *Brower*, 71 Wash. 192, 127 Pac. 1098, it is held that, where a deed was given "subject to existing tenancies," the words include any and all tenancies of whatsoever nature that existed at the time of the execution of the deed.

The exempting clause in section 12 of the Public Utility Act declares that the Act shall not "in any way affect existing contracts."  This is analogous to the constitutional prohibition against the impairment of the obligation of contracts, under which it is held that "if any subsequent law affect to diminish the duty or to impair the right which the law defines upon the consummation of a contract, it necessarily bears on the obligation of the contract, in favor of one party, to the injury of the other; hence any law which in its operation amounts to a denial or obstruction of the rights accruing by the contract * * * is directly obnoxious to the prohibition of the Constitution."  (8 Cyc. 932; *Ogden* v. *Saunders*, 12 Wheat. 213, 338, 6 L. Ed. 606 [see, also, Rose's U. S. Notes].)

"Since the prohibition as to the impairment of the obligation of contracts is absolute, the amount of the impairment is immaterial.  An Act which, in any degree, no matter how slightly, modifies the obligation of a contract, by attempting to relieve one party from any duty assumed by the contract, is repugnant to the constitutional prohibition."  (6 R. C. L., sec. 319; *Farrington* v. *Tennessee*, 95 U. S. 697, 24 L. Ed. 558 [see, also, Rose's U. S. Notes]; *Smith* v. *Norfolk etc. Co.*, 112 Va. 192, 38 L. R. A. (n. s.) 1016, 70 S. E. 482; *Oshkosh Water Works Co.* v. *Oshkosh*, 109 Wis. 208, 95 Am. St. Rep. 870, 85 N. W. 376.)

It is conceded that the contract in question was valid at the time it was entered into by the parties, and up to the time of the passage of the Public Utility Act; it must be conceded that, had the contract been entered into after the passage of the Act, it would have been invalid; it must be conceded, further, that, had it not been for the incorporation, in section 12 of the Act,

of the exemption clause referred to, the contract would have been invalidated by the statute. "The legislature may control and regulate (such matters as those dealt with in the contract) under the so-called police power." (*Onondaga Golf etc. Club* v. *Syracuse Int. Ry.,* 96 Misc. Rep. 213, 160 N. Y. Supp. 693, and cases heretofore cited.) The legislature might, therefore, have placed all service by the public utility companies of the state on an equal footing, regardless of outstanding or existing contracts, or they might have exempted contracts then in force, but excluded from the provisions of the exempting clause any and all renewals or extensions of such existing contracts. But they did not see fit to do so, unless we can read into the statute an intention on the part of the legislature contrary to their expressed declaration. "It is presumed that the legislature understood [12]  the meaning of the words used by them and that words are used in the common and ordinary meaning." (36 Cyc. 1135; *Hasely* v. *Ensley,* 40 Ind. App. 598, 82 N. E. 809; *Skinner* v. *Tibbitts,* 13 N. Y. Civ. Pro. 370; *Continental Hose Co.* v. *Fargo,* 17 N. D. 5, 114 N. W. 834; *United States* v. *Jarvis,* 26 Fed. Cas. No. 15,468; 2 Ware, 278.)

"The statute itself furnishes the best means for its own exposition, and if the sense in which words were intended to be used can be clearly ascertained from all its parts and provisions, a resort to extrinsic facts is not permitted." (36 Cyc. 1136, and cases cited.)

The intention of our legislature can only be ascertained from their clear and positive declaration contained in the Act as they wrote it: that "this [the Public Utility Act], however, does not have the effect of suspending, rescinding, invalidating or in any way affecting existing contracts." To hold, in the face of the plain and explicit provision of the statute, that its exemption does not extend to one of the substantial rights of one of the contracting parties, would not be interpreting the statute as we find it, but would be judicial legislation.

As the option to extend the contract was a substantial right which respondent could have enforced, in the absence of any

legislation invalidating the contract in whole or in part, and as the legislature did not attempt to "in any way" affect existing contracts, the contract in question was in full force and effect during the months of May, June and July, 1915.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.

MR. JUSTICE HOLLOWAY: I dissent. In construing a statute, the courts are required to consider not alone the words employed, but as well the general purpose of the Act and the evils sought to be remedied. The purpose of the statute creating the Utilities Commission and defining its powers and duties was to bring the public utilities of the state under governmental control. The overshadowing evil to be remedied was the prevention of unjust discriminations in service and rates—to abolish all gratuitous rebates and special privileges. It was made unlawful for any public utility to charge a greater or less compensation for service than that established by the commission. With these declared purposes in view, it would seem to be a fair construction of section 12 to hold that the saving clause applies only to contracts then in force, and that it was never the intention of the legislature to extend immunity to renewals or extensions of such contracts.